*452 OPINION OF THE COURT
Wachtler, J.
At issue in this case is the propriety of the action of New York City’s Landmark Preservation Commission in designating as a landmark the Meeting House of the Society of Ethical Culture of the City of New York (Society). The Society argues that the designation, with its attendant restrictions on the use of the property, is a confiscation without due compensation and an interference with the free exercise of the Society’s religious purpose. The Appellate Division held that this landmark designation was a permissible land use regulation. We affirm.
The Society is a religious, educational and charitable organization founded in 1877 for the purpose of uniting interested persons to further the goal of nonsectarian moral improvement. By the early 1900’s the Society had grown to the extent that a permanent home for the organization was sought. To this end, a valuable parcel of real property with an entire block frontage of 200 feet on Central Park West in the City of New York was purchased.
Two buildings eventually were constructed on the site, but only the second, known as the Meeting House, is involved in the instant controversy. That building, which comprises 40 % of the lot area, was deemed worthy of landmark status due to its exemplification as the first building facade of the art nouveau style pioneered in this country by the noted architect Robert D. Kohn, who was also a president of the Society. It was the architectural distinction of the building, and the architect’s personal involvement in the Society, that led the commission to conclude that the Meeting House is “a tangible symbol of the Society’s permanent social contribution and a rich architectural element of the fabric of our City.”
The proposal of the landmark designation was met by the Society’s immediate opposition; first at the public hearing required under the Administrative Code of the City of New York (Administrative Code, § 207-2.0), and later by way of an article 78 proceeding seeking to annul the commission’s designation. This proceeding was converted into an *453 action for declaratory judgment, and after a non jury trial the trial court agreed with the Society’s contention that there was insufficient evidence that the Meeting House was of historical or architectural significance, and declared that the designation was unreasonable, confiscatory and therefore unconstitutional. The Appellate Division, in a thorough and thoughful opinion by Mr. Justice Joseph P. Sullivan, noted that Trial Term had impermissibly substituted its subjective judgment on the landmark question for that of the Landmark Preservation Commission and unanimously reversed. The Society now appeals.
The Administrative Code of the City of New York defines a landmark as “[a]ny improvement, any part of which is thirty years old or older, which has a special character or special historical or aesthetic interest or value as part of the development, heritage or cultural characteristics of the city, state or nation” (Administrative Code, § 207-1.0, subd n). At the outset we note that if the only question before us were whether there is sufficient evidence in the record to support respondents’ determination that the Meeting House falls within this definition, there would be no question but that the designation would be sustained. Certainly, on this record, the determination of the commission in this regard cannot be deemed irrational (see Matter of Pell v Board of Educ., 34 NY2d 222, 230-231). However, because the landmark designation subjects the Society to substantial restriction in its use of the property without any outright compensation, substantial questions remain concerning the constitutional application of those restrictions to the Society, a religious and charitable organization.
The Society notes, quite rightly, that the landmark designation will prevent the exploitation of the full economic value of the Central Park West property, since that development would require the demolition of the existing structures in violation of the commission’s designation. Furthermore, the Society argues, the designation also effectively prevents the development of the adjacent school building portion of the tract which, although not the subject of landmark designation, is physically and functionally related to the Meeting House through common interior passageways *454 and utility systems. This latter argument appears weaker than the first, because the record indicates that the buildings could be demolished separately, but in any event it is clear that at the present time the designation has the potential of inflicting a substantial economic impact on the Society. Inevitably the reduced development potential of the property will be reflected in its market value. The question, of course, is whether the impact on the Society and its charitable activities is so severe that the restrictions become confiscatory (Lutheran Church in Amer. v City of New York, 35 NY2d 121).
Although the State and Federal Constitutions require that land use regulation not be so unreasonable or extreme that it amounts to an appropriation of property without due compensation (Matter of Spears v Berle, 48 NY2d 254, 262; French Investing Co. v City of New York, 38 NY2d 587, 596), it has nonetheless long been accepted that a government may reasonably restrict an owner in the use of his property for the cultural and aesthetic benefit of the community (Matter of Cromwell v Ferrier, 19 NY2d 263; Matter of Trustees of Sailors’ Snug Harbor v Platt, 29 AD2d 376). To be sure individual landmark designation involves greater problems than general zoning or historical district regulation, because unlike those types of restrictions the individual landmark designations do not involve corresponding restrictions of the surrounding parcels which operates to the benefit of the landmark owner (Penn Cent. Transp. Co. v City of New York, 42 NY2d 324, 330, affd 438 US 104). However, we have recognized that despite this particularized burden on the owner, landmark designations, if not unreasonable, are not an undue imposition under proper circumstances (Penn Cent. Transp. Co. v City of New York, supra, p 333). It must be emphasized, however, that reasonableness when related to commercial property necessarily requires that the owner not be deprived by the regulation of a reasonable return on his property (Matter of Spears v Berle, 48 NY2d 254, supra; French Investing Co. v City of New York, 39 NY2d 587, 596, supra). However, because charitable organizations are not created for financial return in the same sense as private businesses, for them the standard is refined to permit the landmark designation restric *455 tion only so long as it does not physically or financially prevent, or seriously interfere with the carrying out of the charitable purpose (Lutheran Church in Amer. v City of New York, 35 NY2d 121, 131, supra; Matter of Trustees of Sailors’ Snug Harbor v Platt, 29 AD2d 376, supra). With this standard now set, and the emphasis properly placed on how the restriction effects the charitable activities of the organization, it is clear that on this record the landmark designation withstands constitutional scrutiny.*
In Lutheran Church (supra), we found an undue interference with the church’s charitable activity where the landmark structure had become so hopelessly inadequate to the church needs, that had the landmark restrictions been enforced, there was no alternative but to cause the charitable activity at that location to cease. Particularly significant in the Lutheran Church case was the fact that the church had tried unsuccessfully to modify the structure to suit its needs, and that no further accommodation, short of demolition and rebuilding, would have alleviated the serious space problems which had arisen. In view of these facts, the landmark restrictions were so debilitating, the impediment to the charitable use so complete, that sustaining the landmark designation without compensation was, in reality, a “naked taking” (35 NY2d 121, 132). The Society has shown no such compelling circumstances here.
Although the Society does argue that the physical structure of the Meeting House is ill-adapted to its present needs, by no means are we assured that the only feasible solution to this problem would entail the demolition of the now protected building facade. Instead, petitioners’ arguments seem to emphasize aggrievement with respect to the prohibition against high-rise development. There is no genuine complaint that eleemosynary activities within the landmark are *456 wrongfully disrupted, but rather the complaint is instead ■ that the landmark stands as an effective bar against putting "me property to its most lucrative use. But there simply is no constitutional requirement that a landowner always be allowed his property’s most beneficial use (Goldblatt v Town of Hempstead, 369 US 590, 592).
It is noteworthy that the designation we are here concerned with applies only to the building facade, and it is possible that studies would reveal that without disturbing this protected portion, feasible modifications could be employed to allow the Society to continue its charitable activities in the building, as it has for over 60 years. This, of course, would be a matter for consideration at the appropriate time by the commission. In fact, the Society concedes that even minor modifications and a certain amount of normal maintenance have been held in abeyance while the questions of demolition and redevelopment were being explored. It therefore remains unclear whether both the interest of the Society and the interest of the public may yet be accommodated.
The Society also contends that the existence of the designation interferes with the free exercise of its religious activities; however, rather than argue its desire to modify the structure to accommodate these religious activities, the Society has suggested that it is improper to restrict its ability to develop the property to permit rental to nonreligious tenants. For this reason the Society’s reliance on our decision Matter of Westchester Reform Temple v Brown (22 NY2d 488), which dealt with restrictions actually impairing religious activities, is clearly misplaced. Although the Society is concededly entitled to First Amendment protection as a religious organization, this does not entitle it to immunity from reasonable government regulation when it acts in purely secular matters (cf. Wisconsin v Yoder, 406 US 205, 215).
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Fuchsberg and Meyer concur.
Order affirmed, with costs.

 Although we note that the challenge here is not to the facial validity of the statute, such a challenge would be to no avail because of the ameliorative provisions of section 207-8.0 which contains a number of alternative methods by which the commission may seek to devise a scheme so that the impediments to the owner’s earning a reasonable return, created by landmark designation, may be offset by other pecuniary benefits. Failing this, the commission may recommend that the city seek to acquire an interest in the property (Administrative Code, § 207-8.0, subd i; see Penn Cent. Trans. Co. v New York City, 438 US 104, 110-113, n 13).