OPINION OF THE COURT
Edward J. Greenfield, J.
Motions numbered 204, 205 and 206 on the Special Term, Part I Calendar of November 10, 1983, are consolidated for disposition.
This CPLR article 78 proceeding to vacate an order and decision of the New York City Landmarks Preservation Commission which permitted the respondent Marymount School (Marymount) to construct a rooftop gymnasium on its Fifth Avenue buildings presents the court with three paradoxes:
*757 Can a “Certificate of Appropriateness” be issued when a proposed building alteration is found to be architecturally inappropriate? -
Can an exception be made for “insufficient return” in favor of a now commercial, nonprofit institution?
Can the Landmarks Preservation Commission permit alterations of a nonlandmark in an historic district when the governing statute authorizes permits only for demolition on such sites and authorizes permits for alterations only in landmark buildings?
The petitioners are two cooperative corporations which own apartment houses adjacent to Marymount. Petitioners’ buildings and Marymount’s town houses occupy the entire blockfront on Fifth Avenue between East 83rd and East 84th Streets facing the Metropolitan Museum of Art.
The buildings lie within the Metropolitan Museum Historic District, which was established pursuant to the authority of chapter 8-A of the Administrative Code of the City of New York (Landmark Law). The Commission has aesthetic jurisdiction over the buildings within this historic district.
Marymount is a Catholic college preparatory school with a predominately female enrollment. The three town houses which it occupies are architecturally distinguished buildings in the beaux arts style, but are not in and of themselves designated landmarks. These buildings were acquired over a span of years by the Order of the Sacred Heart of Mary (Order), which donated them to Marymount for the operation of its school. The Order retained a reversionary interest in the land and buildings in the event that Marymount ceased operation of the school on the site.
Marymount, according to its literature, prides itself on educating and challenging the whole child, intellectually, morally and physically. To the latter end, it has leased recreational and gymnastic facilities from other Catholic schools in the area when such facilities were available and has utilized other neighboring facilities on an ad hoc basis.
Marymount has no on-site gymnasium of its own. However, after two studies by educational evaluators and some parental complaints about the school’s physical education *758 programs, Marymount determined that it needed its own facility where instruction could be given without worrying about the vagaries of the institutions from whom it borrowed space.
It had plans drawn up for a rooftop gymnasium and then applied to the Commission for a certificate of appropriateness so that it could lawfully begin construction (Administrative Code, § 207-7.0). This was denied because the Commission found that the plans submitted clashed with and detracted from the facades of the three buildings.
Marymount then attempted to obtain a certificate of appropriateness on the ground of insufficient return. (Administrative Code, § 207-8.0.)
“Insufficient return” is almost by definition a commercial concept, and inapplicable to nonprofit institutions such as Marymount (cf. Administrative Code, § 207-1.0, subd v). The analogous applicable standard is that landmark-related restrictions “not physically or financially prevent, or seriously interfere with the carrying out of the charitable purpose”. (Matter of Society for Ethical Culture v Spatt, 51 NY2d 449, 455.)
Marymount submitted a revised design which it alleges is virtually invisible from the street, except for a 15-inch span. Hearings were held on the application, and testimony taken. Staff members of the Commission were directed to study the existing Marymount structures and to determine whether the facility could be housed inside the buildings.
The Commission rendered its “Determination of Application for a Certificate of Appropriateness to alter designated buildings inappropriately on grounds of insufficient return” on July 20, 1982. This determination recorded the voluminous documentary evidence and listed persons testifying for and against the proposed addition. It then held that the proposed addition was still architecturally inappropriate, apparently without considering modifications to the original plan.
The Commission then applied the test cited above to the problem before it. It set forth in considerable detail the evidence introduced by Marymount in support of its contention that lack of the gymnasium “seriously interfered *759 with the carrying out of the charitable purpose.” This included, in addition to other factors mentioned, the growing emphasis on physical education in women’s education and the decreasing availability of other facilities to the school. It found other, alternative plans for constructing the facility were not feasible. In conclusion, the determination stated:
“Having found that the Applicant had established:
“(1) that the improvement had ceased to be adequate, suitable, or appropriate for carrying out the purposes to which it is now, and, since acquisition, has been devoted and
“(2) that it has the necessary intent to proceed promptly with constructing the inappropriate addition,
“the Commission determined that a showing of insufficient return had been established by the Applicant.”
The notice to proceed dated February 2, 1983, based upon this determination is the subject of this proceeding. Neighboring property owners, petitioners in particular, have charged that construction of the rooftop gymnasium, even as modified, would obstruct views from their apartments and lessen property values, as well as detract from the fashionable ambiance of the neighborhood.
Petitioners challenge the Commission’s actions on the grounds:
(a) That the agency was without jurisdiction to issue the notice to proceed, because the relevant statute gives it authority to rule on demolition of buildings in historic districts, but not on alterations to them;
(b) That assuming for argument’s sake that the Commission was within its power to consider the issue, the notice to proceed was improperly issued because the proposed modification was not necessitated by an interference with the school’s present use of its property.
(c) The facts in this case plainly do not support the Commission’s action; i.e., the school had demonstrated mere inconvenience, and not that its corporate purpose was being frustrated by the lack of a gymnasium.
Marymount had interposed an answer which asserts cross claims against the corespondent Commission in the *760 event that the petition is granted. These include an assertion that the statute is confiscatory and therefore unconstitutional, and that the Commission erred in not considering the appropriateness of the new design.
There are procedural and ripeness deficiencies inherent in the assertion of these cross claims. At the present time, it is sufficient to note that both the Commission and the petitioners have moved to dismiss them.
Marymount appears to have fallen into one of the many interstices in the Landmark Law. The courts have been attempting to assist the Commission in resolving problems not covered by this legislation for years. (See, e.g., Lutheran Church in Amer. v City of New York, 35 NY2d 121.)
The particular “oversight” upon which the petitioners rely occurs in the following portion of the statute: “(1) Except as otherwise provided in paragraph two of this subdivision a, in any case where an application for a permit to demolish any improvement located on a landmark site or in an historic district * * * is filed with the commission, together with a request for a certificate of appropriateness authorizing such demolition, and in any case where an application for a permit to make alterations to or reconstruct any improvement on a landmark site or containing an interior landmark is filed with the commission”. (Administrative Code, § 207-8.0, subd a, par [1].)
Petitioners argue that the failure to include provisions for the Commission to rule upon applications to make alterations to a nonlandmark building in an historic district makes the issuance of the notice to proceed an ultra vires act.
Petitioner relies substantially upon wording in the leading case in this area, Matter of Trustees of Sailors’ Snug Harbor v Platt (29 AD2d 376), in support of this argument. In Snug Harbor, the petitioner, a charitable institution operating a retirement home for aged seamen, wished to demolish several Georgian buildings being used as dormitories which had become inadequate over the years to house these elderly men. The question presented to the court was whether denial of permission to raze these architecturally unique buildings amounted to a taking of property by the regulating authority, or confiscation without *761 compensation. The Appellate Division commented, in considering the question: “Chapter 8-A [the Landmark Law] provides some guidelines as to what constitutes an undue burden on commercial realty and provides relief in such instances * * * However, the corresponding provisions in regard to property devoted to charitable uses are limited to the instance where the institution desires to alienate the property by sale or lease * * * We agree with Special Term that this does not render the statute unconstitutional. It must be interpreted as giving power to the commission to provide relief in the situation covered by the statute, but not restricting the court from so doing in others” (29 AD2d, at p 378). Petitioners interpret Snug Harbor as mandating that Marymount apply first to this court, rather than to the Commission, for permission to alter its buildings, since the Commission only had jurisdiction to permit the school to demolish, as opposed to altering the building.
Petitioners’ interpretation of Snug Harbor (supra) in this context is unduly restrictive. This court believes that Snug Harbor gives this court the power to continue to formulate the common law which will govern in situations not foreseen in the statute. The body of case law which is of equal import and dignity with statutory law, and just as binding upon administrative agencies, will thereafter be used in the agency’s determinations.
The Commission argues that this court should find that it had jurisdiction to issue the notice to proceed, and that the omission of the specific words authorizing alterations in section 207-8.0 (subd a, par [1]) was a simple oversight. The Commission urges that a review of the Landmark Law in its entirety shows that it was the legislative intent that the Commission have such jurisdiction. This court agrees. It was plainly contemplated that the Commission have jurisdiction to consider affording lesser relief to the owner of a building in an historic district than the permission to demolish, given in the subdivision. (See, generally, Administrative Code, § 205-1.0, subd b, “Purpose and declaration of public policy”; § 207-4.0, subd a, par [1], “Regulation of construction, reconstruction, alteration and demolition.”)
To hold that the courts, which have limited expertise in such a specialized field, should pass ab initio upon the *762 efficacy and adequacy of alterations which must be aesthetically integrated with the neighboring structures would be improper when the legislative intent to the contrary is clear (Administrative Code, § 207-2.0). “Statutes are presumed to have reasonable intendment. Courts are not always controlled by the literal meaning expressed in the * * * statute * * * [I]f the context indicates words are inadvertently omitted, such as are necessary may be supplied by the court to complete the sense and express the legislative intent, where consideration of the whole act with reference to the subject matter to which it applies indicates the true legislative intent.” (Standard Acc. Ins. Co. v Newman, 2 Misc 2d 348, 359, affd 268 App Div 967.) It is not the function of any court and specifically this court to create jurisdiction by implication; however, it is the court’s function to construe a statute to prevent an inconsistent and unreasonable result. (Matter of Stockwell, 210 App Div 753.) This is obviously the construction placed upon the Snug Harbor test (supra) since the Landmarks Commission has consistently applied a common-law test in these “charitable” cases not precisely covered by the statute. These cases came to the courts later, generally when the institution sought review of the Commission’s decision. (See, e.g., Matter of Society of Ethical Culture v Spatt, 51 NY2d 449, supra.) Accordingly, it is the judgment of this court that the issuance of the notice to proceed was within the Commission’s jurisdiction.
Petitioners go on to argue that even assuming there was jurisdiction in the Commission to entertain the matter, it misapplied the standard developed by the courts in the trilogy of cases which supply controlling precedent in this area, i.e., Matter of Trustees of Sailors’ Snug Harbor v Platt (29 AD2d 376, supra); Lutheran Church in Amer. v City of New York (35 NY2d 121, supra); and Matter of Society of Ethical Culture v Spatt (51 NY2d 449, supra). The problem is that these cases arguably posit two tests: the Snug Harbor test, that regulation not seriously interfere with the carrying out of the charitable purpose, and a more stringent test which appears as dictum in Ethical Culture which explicitly reaffirmed the Snug Harbor test. The Ethical Culture test permits regulation which does not *763 interfere with activities being carried on inside the structure. In short, if school activities were not being disrupted by the lack of a gymnasium, then the Commission should not have issued the notice to proceed.
It appears to this court that the Commission has properly applied both criteria to the problem at hand and had determined (a) that Marymount’s charitable purpose of providing a well-rounded quality education is being undermined by the lack of a gymnasium, and (b) that activities within the school — the education of the students — are being hindered by the lack of a gymnasium. It is hornbook law that the court cannot substitute its opinion for that of the agency on these matters if the agency’s determination has a rational basis. The court finds that the determination is supported by facts in the record and is neither arbitrary, capricious nor contrary to law. The impingement on plaintiffs and on the essential character of the historic district is minimal. A contrary determination, on the other hand, would have substantial adverse impact on the school.
Marymount has asserted two “contingent” cross claims in its answer which are not viable unless the petition is granted and the notice to proceed is annulled. These cross claims are, therefore, not ripe for determination, and are, in addition, not properly interposed in this proceeding (CPLR 402, 7804, subd [d]). Accordingly, Marymount’s application for leave to assert them nunc pro tunc is denied, and all requests of the other parties addressed to such cross claims are denied as moot.
The application is denied and the petition is dismissed. The cross motion of Marymount is denied and the cross motions of the Commission and the petitioners are denied on the ground of mootness.