[No. 56377–2. En Banc. March 22, 1990.]

FIRST COVENANT CHURCH OF SEATTLE, WASHINGTON, *Appellant*, v. THE CITY OF SEATTLE, *Respondent*.

*A.T. Wendells* and *Clinton, Fleck & Glein,* by *Gordon S. Clinton,* for appellant.

*Douglas N. Jewett, City Attorney, Gordon F. Crandall, Senior Assistant,* and *James E. Fearn, Jr., Assistant,* for respondent.

DORE, J.—This is a case of first impression.

First Covenant Church challenges the constitutionality of two separate but interrelated ordinances, the Seattle

Landmarks Preservation Ordinance 106348[1] and Seattle ordinance 112425 designating First Covenant Church a landmark. The Church brought a declaratory judgment action seeking declaration that the Seattle ordinance designating the church a landmark and the Seattle Landmarks Preservation Ordinance as applied to churches were unconstitutional and void. The trial court held that the Church's claim was premature and entered summary judgment in favor of the City. We hold that this case presents a justiciable issue properly presented for declaratory judgment and that the designation ordinance and the Landmarks Preservation Ordinance as applied to churches are unconstitutional as they violate the right of free exercise of religion as guaranteed by the United States and Washington State Constitutions. We reverse.

## FACTS

First Covenant Church of Seattle is a nonprofit Washington corporation. The Church owns and operates the church located at Pike and Bellevue in Seattle which is used exclusively for religious purposes.

In 1977, the City of Seattle adopted the Seattle Landmarks Preservation Ordinance to, *inter alia,*

> designate, preserve, protect, enhance and perpetuate those sites, improvements and objects which reflect significant elements of the City's cultural, aesthetic, social, economic, political, architectural, engineering, historic or other heritage . . ..

SMC 25.12.020(B) (1977). Pursuant to that ordinance, the Landmarks Preservation Board nominated First Covenant Church as a landmark on October 15, 1980. A public hearing was held on January 7, 1981, at which the Church objected to the nomination. Following the hearing, the

---

[1]This ordinance is now codified at Seattle Municipal Code 25.12.

board voted to approve the designation of the church as a landmark. On April 22, 1981, the board voted to adopt controls to preserve the exterior of the church and recommended to the Seattle City Council that it approve those controls.

The Church and the City were unable to come to an agreement regarding application of the controls and the matter was referred to a hearing examiner. A public hearing was held before an examiner on June 3, 1981, at which the Church objected to designation of the church as a landmark building. On July 2, 1981, the hearing examiner recommended that the city council approve the controls proposed by the board for the preservation of the church facade.

Over 4 years later, September 17, 1985, the city council adopted ordinance 112425 formally designating the church a landmark and placing specific controls upon the Church's ability to alter the structure's exterior. More than 5 years elapsed from the date the board nominated the church for landmark status until the city council passed the designating ordinance. Throughout that entire period the Church remained subject to the controls proposed by the board and the landmarks ordinance's provisions requiring the landmark owner to obtain a Certificate of Approval for structural changes necessitating a building permit.[2]

The Church brought a declaratory judgment action against the City in January 1986, seeking declaration that application of the Seattle Landmarks Preservation Ordinance to churches was unconstitutional and that the ordinance designating First Covenant Church a landmark was void. The Church then moved for summary judgment on the issues of the landmarks ordinance's constitutionality as applied to churches. The City filed a cross motion for partial summary judgment on the same issues. The trial court

---

[2]Under the Landmarks Preservation Ordinance, once the board designates a landmark the provisions of the landmarks ordinance requiring a Certificate of Approval for alterations or significant changes to the landmark apply to the property owner. SMC 25.12.390 (1977).

entered an order denying the Church's motion and granting the City partial summary judgment without prejudice to the Church's remaining contentions of law and fact. The trial court held that the landmarks ordinance properly applied to churches and that until the City applied the landmarks ordinance in a manner that impinged upon the Church's constitutional rights to operate its religious property without interference from the City, the Church's claim that the landmarks ordinance violated its rights of religious freedom was premature.

Prior to trial, the City filed a motion for summary judgment seeking dismissal of all of the Church's remaining causes of action. The trial court granted summary judgment and dismissed the Church's complaint in its entirety with prejudice.

The Church appealed both summary judgment orders. The Court of Appeals certified the appeal here.

## ISSUES

Two issues are presented:

(1) Is a constitutional challenge to the Seattle Landmarks Preservation Ordinance by the Church premature until the ordinance is enforced?

(2) Is the Seattle Landmarks Preservation Ordinance as applied to churches unconstitutional under the free exercise of religion provisions of the United States and Washington State Constitutions?

## ANALYSIS

The issue of whether the Church's cause of action is premature requires a determination of whether there exists a justiciable controversy and whether the Church's challenge satisfies the ripeness doctrine. We find that a justiciable controversy exists and that the Church's claims are ripe for judicial determination.

■ The Church brought its action for declaratory judgment pursuant to the Uniform Declaratory Judgments Act, RCW 7.24.020, and applicable court rules. In order for a

court to rule on a declaratory judgment, the case must present a justiciable controversy. *State ex rel. Graham v. Northshore Sch. Dist. 417*, 99 Wn.2d 232, 246, 662 P.2d 38 (1983). This court established that a justiciable controversy exists under the Act if the controversy presents:

> (1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive.

*Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 815, 514 P.2d 137 (1973); *Spokane v. Taxpayers*, 111 Wn.2d 91, 96, 758 P.2d 480 (1988). All four elements must be satisfied or the court must dismiss the case; otherwise, the court enters into the prohibited area of advisory opinions. *Lawson v. State*, 107 Wn.2d 444, 460, 730 P.2d 1308 (1986). This case satisfies all four elements and, therefore, presents this court with a justiciable controversy.

The Church argued that the designation of the church structure as a landmark and the imposition of controls constituted substantial interference by the City with the Church's religious freedom. According to the Church, several impacts occurred immediately upon the board's designation of the church as a landmark. Those impacts included: interference with the Church's freedom to alter the exterior of the church structure; necessary secular approval of any proposed alteration of the facade requiring additional paperwork, negotiations and hearings; a limitation on the Church's ability to sell its property; and uncertainty of discretionary approval confronting the Church in its planning of any exterior change. In addition, an uncontroverted affidavit stated that landmark designation of the church resulted in a depreciation of the market value of the property from $700,000 to $400,000. Clerk's Papers, at 345–46. Affidavit of John Paul Rea.

The City contends that, absent the submission of a proposal for alteration, the Church's claim is speculative and

premature. The trial court agreed and granted the City's motion for summary judgment.

■ The Church's challenge to the constitutionality of the landmarks ordinance as applied to church property and the designation of the church as a landmark satisfies the justiciable controversy test. The dispute involves a present controversy between parties with opposing interests. The landmarks board designated First Covenant Church a landmark and the city council formalized that designation by passing ordinance 112425. The Church asserts that landmark designation of churches violates the constitutional guaranty of freedom of religious expression. The interests of the City and the Church are substantial and a determination by this court as to the constitutionality of the landmarks ordinance will clarify valuable property rights of churches and their freedom to practice religion. A decision here will be welcomed throughout the United States, as this is a case of first impression on this constitutional challenge.

THE CHURCH'S CONSTITUTIONAL CHALLENGE
IS RIPE FOR ADJUDICATION

In its motion for summary judgment, the City argued that the Church's cause of action was not ripe for judicial review under the ripeness doctrine established by the United States Supreme Court.[3] The Church responded that the resultant impacts of the landmark designation of the church created a present controversy ripe for judicial review.

■ Deciding whether a case presents a cause of action ripe for judicial determination requires an evaluation of "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."

---

[3]The Supreme Court developed the ripeness doctrine in a trilogy of cases decided in 1967. *See Abbott Labs. v. Gardner,* 387 U.S. 136, 18 L. Ed. 2d 681, 87 S. Ct. 1507 (1967); *Toilet Goods Ass'n v. Gardner,* 387 U.S. 158, 18 L. Ed. 2d 697, 87 S. Ct. 1520 (1967); *Gardner v. Toilet Goods Ass'n,* 387 U.S. 167, 18 L. Ed. 2d 704, 87 S. Ct. 1526 (1967).

*Abbott Labs. v. Gardner,* 387 U.S. 136, 149, 18 L. Ed. 2d 681, 87 S. Ct. 1507 (1967); *Standard Alaska Prod. Co. v. Schaible,* 874 F.2d 624, 627 (9th Cir. 1989). "A claim is fit for [judicial] decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." 874 F.2d at 627.

The Church's cause of action does not fail for lack of ripeness. The record before the court contains the factual background surrounding the designation of First Covenant Church and no additional facts need be developed to determine the constitutionality of that designation. Furthermore, the designation ordinance constitutes a final action by the Landmarks Preservation Board and the Seattle City Council. The Church unsuccessfully appealed the designation decision through numerous administrative procedures set forth in the Landmarks Preservation Ordinance. The Church has exhausted its administrative remedies and the only forum now available for appeal is the judicial system.

We hold that the Church's challenge to the Landmarks Preservation Ordinance and the designation ordinance is ripe for judicial review and that the ordinances violate the Church's constitutional right of free exercise of religion.

## THE ORDINANCES CREATE AN UNCONSTITUTIONAL INFRINGEMENT UPON THE CHURCH'S RIGHT OF FREE EXERCISE OF RELIGION

The issue is whether the law should prefer religious freedom or an exercise of the police power to maintain the architectural and cultural interests associated with landmark preservation. Although First Amendment rights are not absolute, "freedom of religion [is] in a preferred position." *Murdock v. Pennsylvania,* 319 U.S. 105, 115, 319 U.S. 166, 87 L. Ed. 1292, 87 L. Ed. 2d 1330, 63 S. Ct. 870, 63 S. Ct. 882, 63 S. Ct. 891, 146 A.L.R. 81 (1943). *See also Thomas v. Review Bd. of Ind. Empl. Sec. Div.,* 450 U.S. 707, 717, 67 L. Ed. 2d 624, 101 S. Ct. 1425 (1981) (religious beliefs are protected by the Free Exercise Clause which provides special protection to the exercise of religion).

The separation between Church and State is rooted in the historical foundations of this nation. Responding to a request from the Danbury Baptist Association, President Thomas Jefferson wrote:

"Believing with you that religion is a matter which lies solely between man and his God; that he owes account to none other for his faith or his worship; that the legislative powers of the government reach actions only, and not opinions,—I contemplate with sovereign reverence that act of the whole American people which declared that their legislature should 'make no law respecting an establishment of religion or prohibiting the free exercise thereof,' thus building a wall of separation between church and State. . . ."

*Reynolds v. United States,* 98 U.S. 145, 164, 25 L. Ed. 244 (1878). While recognizing instances where the compelling interests of the government outweigh its citizens' right to freely pursue their religious beliefs, the judiciary in this nation consistently prohibits unjustified governmental interference with an individual's constitutional right of free exercise of religion.

The Church contends that the Landmarks Preservation Ordinance, as applied to church property, and the designating ordinance are unconstitutional as they violate the Church's right of free exercise of religion guaranteed by the first amendment to the United States Constitution[4] and Washington's Const. art. 1, § 11 (amend. 34).[5]

▆▆▆ To establish a violation of free exercise, the complaining party must show "the coercive effect of the enactment as it operates against him in the practice of his religion." *School Dist. v. Schempp,* 374 U.S. 203, 223, 10 L. Ed. 2d 844, 83 S. Ct. 1560 (1963); *Witters v. Commission for the Blind,* 112 Wn.2d 363, 371, 771 P.2d 1119, *cert. denied,* __ U.S. __, 107 L. Ed. 2d 106, 110 S. Ct. 147

---

[4] The first amendment to the United States Constitution provides in pertinent part that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . .".

[5] Article 1, section 11 of the Washington Constitution provides that "[a]bsolute freedom of conscience in all matters of religious . . . worship . . . shall be guaranteed to every individual". Const. art. 1, § 11 (amend. 34).

(1989). If such an infringement is established, the court subjects the challenged legislation to strict scrutiny analysis requiring the governmental body to prove that (1) a compelling state interest exists to justify the regulation and (2) the regulation constitutes the least restrictive means to achieve the government's objective. *Sherbert v. Verner*, 374 U.S. 398, 10 L. Ed. 2d 965, 83 S. Ct. 1790 (1963); *Wisconsin v. Yoder,* 406 U.S. 205, 32 L. Ed. 2d 15, 92 S. Ct. 1526 (1972); *Hobbie v. Unemployment Appeals Comm'n,* 480 U.S. 136, 94 L. Ed. 2d 190, 107 S. Ct. 1046 (1987).

In *Sherbert v. Verner, supra,* the South Carolina Employment Security Commission denied unemployment benefits to a Sabbatarian who was fired for refusing to work Saturdays, the Sabbath Day of her religion. The South Carolina Unemployment Compensation Act provided "that a claimant is ineligible for benefits '[i]f . . . he has failed, without good cause . . . to accept available suitable work when offered him by the employment office or the employer . . . .'" 374 U.S. at 401. The Employment Security Commission found that the appellant's refusal to work Saturdays placed her within that provision disqualifying her for unemployment benefits. 374 U.S. at 401. The South Carolina Supreme Court affirmed, rejecting appellant's contention that the disqualifying provision in the statute violated her First Amendment right of free exercise of religion. 374 U.S. at 401. On appeal, the United States Supreme Court stated that for the decision of the South Carolina Supreme Court

> to withstand appellant's constitutional challenge, it must be either because her disqualification as a beneficiary represents no infringement by the State of her constitutional rights of free exercise, or because any incidental burden on the free exercise of appellant's religion may be justified by a "compelling state interest in the regulation of a subject within the State's constitutional power to regulate . . . ."

(Citation omitted.) 374 U.S. at 403.

Turning to the appellant's First Amendment challenge, the Court found that the disqualifying provision clearly

burdened the free exercise of appellant's religion as it pressured her to forgo that practice. 374 U.S. at 403–04. Having found an infringement of the appellant's right of free exercise, the Court then subjected the statute to strict scrutiny analysis. The Court stated that

> [i]t is basic that no showing merely of a rational relationship to some colorable state interest would suffice; in this highly sensitive constitutional area, "[o]nly the gravest abuses, endangering paramount interests, give occasion for permissible limitation," *Thomas* v. *Collins*, 323 U. S. 516, 530 [89 L. Ed. 430, 65 S. Ct. 315] (1945).

374 U.S. at 406. Finding that the State did not advance such an abuse or danger, the Court reversed the State Supreme Court and remanded the case for further proceedings. 374 U.S. at 410.

Several years later, the Court affirmed the applicability of strict scrutiny analysis to governmental interference with the free exercise of religion. In *Wisconsin v. Yoder, supra,* members of the Amish faith appealed their convictions for violating Wisconsin's compulsory school–attendance law which required children to attend school until age 16. 406 U.S. at 207.[6] The Amish asserted that the statute violated their right of free exercise. They believed, in accordance with the tenets of their faith, that their children's attendance in high school was contrary to the Amish religion and way of life. 406 U.S. at 209. The Wisconsin Supreme Court found the law invalid under the Free Exercise Clause of the First Amendment and the State appealed. 406 U.S. at 207.

The United States Supreme Court applied strict scrutiny analysis to the law stating that in order for the State to overcome the free exercise challenge:

> it must appear either that the State does not deny the free exercise of religious belief by its requirement, or that there is a state interest of sufficient magnitude to override the interest claiming protection under the Free Exercise Clause.

---

[6]The appellees were convicted and fined $5 for their refusal to send their children to public school after they had completed the eighth grade. 406 U.S. at 207.

406 U.S. at 214. Finding that the State's interest in compulsory education did not outweigh the appellees' right of free exercise of religion, the court concluded

[t]he essence of all that has been said and written on the subject is that only those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion.

406 U.S. at 215. *Cf. Thomas v. Review Bd. of Ind. Empl. Sec. Div.*, 450 U.S. 707, 718, 67 L. Ed. 2d 624, 101 S. Ct. 1425 (1981) (State's denial of unemployment benefits to Jehovah's Witness who refused transfer to munitions division on religious grounds unconstitutionally burdened his right to free exercise of religion; "The state may justify an inroad on religious liberty by showing that it is the least restrictive means of achieving some compelling state interest.").

Recently, the Court appeared to step back from the strict scrutiny standard advancing instead a less rigorous standard of review for free exercise challenges. In *Bowen v. Roy*, 476 U.S. 693, 90 L. Ed. 2d 735, 106 S. Ct. 2147 (1986), the Court addressed a First Amendment challenge to a federal statutory requirement that participants in certain welfare programs must provide state welfare agencies administering the program with their social security number and those of each member of their household as a condition of receiving benefits. 476 U.S. at 695. The appellees contended that obtaining a social security number for their daughter would violate their Native American religious beliefs. 476 U.S. at 695. Rejecting the contention that the statutory requirement violated appellees' right of free exercise, Chief Justice Burger analyzed the statute under a lower standard of review. The Chief Justice stated that "the Government meets its burden when it demonstrates that a challenged requirement for governmental benefits, neutral and uniform in its application, is a reasonable means of promoting a legitimate public interest." 476 U.S. at 707–08. However, only Justices Powell and Rehnquist concurred in that portion of the majority opinion.

One year later, the Court decisively rejected Chief Justice Burger's less rigorous standard. In *Hobbie v. Unemployment Appeals Comm'n,* 480 U.S. 136, 94 L. Ed. 2d 190, 107 S. Ct. 1046 (1987), once again the Court reviewed the denial of unemployment benefits to an individual terminated from employment for her refusal to work on her Sabbath Day. Responding to the claim that its denial of benefits violated appellant's right of free exercise, the Unemployment Appeals Commission argued that the Court should apply the standard of review set forth in *Roy.* Justice Brennan, writing for a 6–Justice majority, stated that five Justices rejected that argument in *Roy* and that "[w]e reject the argument again today." 480 U.S. at 141. Setting forth the applicable standard of review, the Court stated that "[b]oth *Sherbert* and *Thomas* held that such infringements must be subjected to strict scrutiny and could be justified only by proof by the State of a compelling interest." 480 U.S. at 141. Applying strict scrutiny analysis, the Court held that Florida's denial of unemployment benefits to appellant violated the Free Exercise Clause of the First Amendment. 480 U.S. at 146.[7]

 The ordinances at issue require the Church to seek secular approval of any proposed change to the church's facade requiring a building permit. SMC 25.12.670 (1977); Seattle city ordinance 112425 (1985) app. B, at 226. The landmarks ordinance requires that once the landmarks board files an approval of a nomination of a landmark, the landmark owner must obtain a Certificate of Approval from the board before the owner may make alterations or significant changes to the designated features or characteristics of the landmark or make significant changes or alterations

---

[7]As recently as the last term, the Court employed strict scrutiny analysis to a government regulation challenged as violative of the Free Exercise Clause. In *Hernandez v. Commissioner,* ___ U.S. ___, 104 L. Ed. 2d 766, 786, 109 S. Ct. 2136, 2148 (1989), the Court stated that "[t]he free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden."

which would violate any control imposed by the designating ordinance. SMC 25.12.670 (1977).[8] A control set forth in the designating ordinance specifically requires the Church to obtain a Certificate of Approval for any alteration to the exterior of the church structure requiring a building permit. *See* section 2 of Seattle city ordinance 112425 (1985) app. B, at 226. The practical effect of the provisions is to require a religious organization to seek secular approval of matters potentially affecting the Church's practice of its religion.

The City claims that the designating ordinance's exemption for changes based upon liturgy precludes any interference by the City with the Church's practice of religion. The designating ordinance provides:

> Section 2. The following controls upon alteration of the landmark are hereby imposed:
> A Certificate of Approval must be obtained or the time for denying a Certificate of Approval must have expired before the owner may make any alteration which requires a building permit, to any portion of the exterior of the building; Provided, that all in kind maintenance and repair of the exterior and any alterations which do not require a building permit shall be excluded from the Certificate of Approval requirements; and Provided further that *nothing herein shall prevent any alteration of the exterior when such alterations are necessitated by changes in liturgy,* it being understood that the owner is the exclusive authority on liturgy and is the decisive party in determining what architectural changes are appropriate to the liturgy. *When alterations necessitated by changes in liturgy are proposed, the owner shall advise the Landmarks Preservation Board in writing of the nature of*

---

[8]Section 25.12.670 of the Seattle Landmarks Preservation Ordinance sets forth the requirement of the Certificate of Approval:

"After the filing of an approval of nomination with the Superintendent and thereafter as long as proceedings for a designation are pending or a designating ordinance so requires, a certificate of approval must be obtained, or the time for denying a certificate of approval must have expired, before the owner may:

"A. Make alterations or significant changes to specific features or characteristics of the site, improvement or object suggested for preservation in the approval of nomination, or thereafter specified in the report on approval of designation of the decision of the Hearing Examiner, whichever was issued most recently, while proceedings under this chapter are pending; or

"B. Make alterations or significant changes which would be in violation of specific controls imposed by a designating ordinance."

*the proposed alterations and, the Board shall issue a Certificate of Approval. Prior to the issuance of any Certificate, however, the Board and owner shall jointly explore such possible alternative design solutions as may be appropriate or necessary to preserve the designated features of the landmark.*

(Italics ours.) Seattle city ordinance 112425 (1985). We find that the liturgy exception does not mitigate the City's infringement upon the Church's right of free exercise. The liturgy exception establishes a vague standard which does not withstand close scrutiny.

██ ██ The designating ordinance contains no definition of "liturgy". Absent a contrary definition provided in the ordinance, words of an ordinance are to be given their usual and ordinary meaning. *Dominick v. Christensen*, 87 Wn.2d 25, 27, 548 P.2d 541 (1976). *Webster's Third New International Dictionary* (1971) at page 1323 defines liturgy as "a rite or series of rites, observances, or procedures prescribed for public worship in the Christian church in accordance with authorized or standard form". According to that definition, liturgy essentially refers to the religious activity occurring within a church as part of the religious ritual. It provides a vague criterion for the Church to rely upon when planning alterations to the church exterior. Would a wider door to permit access by handicapped parishioners comprise a liturgical change? Although the widening of the door does not relate directly to the rites or procedures of worship in the church, it does facilitate the ability of disabled persons to participate in religious services and activities. The anomalies created by the liturgy exception are cumbersome and would result in numerous delays in carrying out routine church work. We find that the liturgy exception constitutes a vague and unworkable criterion that fails to accommodate the constitutional rights of the Church and infringes on the Church membership's ability to freely practice its religion.

Even if the liturgy exception represented an appropriate criterion, the requirements of the designating ordinance still violate the Church's right of free exercise. The controls

placed upon the Church require that if the Church proposes a change based upon liturgy, prior to the issuance of a Certificate of Approval "the Board and owner shall jointly explore such possible alternative design solutions as may be appropriate or necessary to preserve the designated features of the landmark." Seattle city ordinance 112425 (1985) app. B, at 226. Regardless of the religious nature of the proposed alteration, the Church must submit its plans to the board, a secular body, and negotiate possible alternatives. That requirement creates unjustified governmental interference in religious matters of the Church and thereby creates an infringement on the Church's constitutional right of free exercise. Furthermore, the parallel provisions of the landmarks ordinance requiring a landmark owner to obtain a Certificate of Approval prior to making structural changes to the landmark also infringe upon the Church's religious freedom.

A substantial infringement of a First Amendment right can be justified only by proof of a compelling governmental interest. *Hobbie v. Unemployment Appeals Comm'n,* 480 U.S. 136, 141, 94 L. Ed. 2d 190, 197–98, 107 S. Ct. 1046, 1049 (1987); *Sherbert v. Verner,* 374 U.S. 398, 403, 10 L. Ed. 2d 965, 83 S. Ct. 1790 (1963). Landmark preservation laws constitute a use of police power to maintain the aesthetic and cultural features of a community. Such ordinances do not represent efforts by the government to further its interest in the health and safety of its citizens. The United States Supreme Court found that landmark preservation represented an important state interest but did not express the view that it constituted a compelling interest. *Penn Cent. Transp. Co. v. New York City,* 438 U.S. 104, 57 L. Ed. 2d 631, 98 S. Ct. 2646 (1978).

In *Penn Central,* the Supreme Court addressed the validity of the application of New York City's Landmarks Preservation Law to a commercial building. The owners of Grand Central Terminal intended to construct a high–rise office building above the terminal. 438 U.S. at 116–17. The

New York City Landmarks Preservation Commission previously designated the terminal a historical landmark and refused to grant approval of the owners' building plans. The owners filed suit alleging, *inter alia,* that the application of the landmarks law constituted a taking without just compensation and deprived the owners of their property without due process. 438 U.S. at 119. Initially, the Court acknowledged the public interest in preserving historical landmarks. 438 U.S. at 107. Turning to the taking issue, the Court stated that the rational relation standard used in challenges to zoning laws applied as well to challenges to landmark designations. 438 U.S. at 133 n.29. Rejecting appellants' claims, the Court held that based upon the present record "[t]he restrictions imposed are substantially related to the promotion of the general welfare . . .". 438 U.S. at 138.

The appellants did not allege any violation of a fundamental right. Absent such a claim, the Court was able to employ minimal scrutiny in its analysis of New York City's Landmarks Preservation Law. Although the Court held that the landmarks law satisfied the limited inquiry of minimal scrutiny, it seems most likely the Court would not have reached the same result had it analyzed the law under strict scrutiny.

█ We hold that the preservation of historical landmarks is not a compelling state interest. Balancing the right of free exercise with the aesthetic and community values associated with landmark preservation, we find that the latter is clearly outweighed by the constitutional protection of free exercise of religion and the public benefits associated with the practice of religious worship within the community. *See Church of St. Paul & St. Andrew v. Barwick,* 67 N.Y.2d 510, 525, 496 N.E.2d 183, 505 N.Y.S.2d 24 (Meyer, J., dissenting), *cert. denied,* 479 U.S. 985 (1986).

CONCLUSION

We hold that the Seattle Landmarks Preservation Ordinance 106348 and Seattle ordinance 112425 designating

First Covenant Church a landmark violate the Church's First Amendment rights under the United States Constitution and Washington's Const. art. 1, § 11 (amend. 34).

We reverse the City's summary judgment and grant summary judgment of dismissal to the Church.

CALLOW, C.J., UTTER and DURHAM, JJ., and PEARSON, J. Pro Tem., concur.

UTTER, J. (concurring)—I agree with the majority's conclusion that this declaratory judgment action is ripe for decision and that the landmark preservation ordinance cannot be applied to the First Covenant Church. I write separately to emphasize the facts which require this decision in this case and to indicate the legal standards which should govern such cases in the future.

I

As the majority points out, the landmark designation has reduced the value of the church's property, its most valuable asset. Since the landmark designation is complete and has had an impact on the church, consideration of this case is not premature.

The dissent argues correctly that we should dispose of the question of whether state regulation of the church's building modifications violates the church's free exercise rights by adopting the defendant's interpretation of the ordinance. This would make any changes to the church's structure for religious purposes exempt from the ordinance's review procedures.

In order to do that, however, we have to reach the issue. Because the case presents a ripe justiciable controversy, we should reach this issue.

The dissent cites two cases to support its view that this case is neither ripe nor justiciable. See dissenting opinion, at 418. In both these cases the court found that the matter before it was justiciable. *See Spokane v. Taxpayers,* 111 Wn.2d 91, 96, 758 P.2d 480 (1988) (controversy justiciable); *Abbott Labs. v. Gardner,* 387 U.S. 136, 18 L. Ed. 2d 681, 87

S. Ct. 1507 (1967) (controversy ripe). Therefore, the dissent's reliance on these cases is misplaced.

A justiciable controversy requires (1) an existing dispute; (2) parties having genuine opposing interests; (3) direct and substantial interests at stake; and (4) a controversy amenable to conclusive judicial resolution. *Spokane,* 111 Wn.2d at 96. This case involves an existing dispute about whether this specific church may be designated a landmark. The State has an interest in preserving First Covenant and the church has an interest in operating it without state interference and without diminution in value. The judiciary can conclusively decide this case, as the dissent has demonstrated, with respect to the liturgy exemption.

The dissent complicates the inquiry into justiciability greatly by introducing the concept of ripeness as articulated by the United States Supreme Court in *Abbott Labs. v. Gardner, supra* at 148–49. None of our prior cases have cited *Gardner* or approved of its characterization of the ripeness doctrine.

More importantly, *Gardner* supports finding that this case is ripe. *Gardner* involved a preenforcement challenge to Food and Drug Administration regulations. *Gardner,* 387 U.S. at 138–39. The *Gardner* Court held that the challenge was ripe and remanded to the Court of Appeals for the Third Circuit for a ruling on the merits. 387 U.S. at 156. Although the government had not yet enforced the regulations against the drug companies, the Court held that the impact of the regulations "is sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage." *Gardner,* 387 U.S. at 152. The Court noted that the purpose of the declaratory judgment act required judicial review. *See Gardner,* 387 U.S. at 152. Similarly, the church has been designated a landmark; like the drug companies, it must obey the challenged law if constitutional. It need not await the application of each individual restriction of the act before challenging its constitutionality. It has a right to the declaratory judgment it seeks.

Washington precedent on ripeness in land–use cases does not allow us to delay a decision just because the litigant has not suffered enough injury to satisfy the court. In our previous cases we have decided whether claims were ripe on the basis of whether the administrative action was final, not on the intensity of the litigant's complaint. *See Estate of Friedman v. Pierce Cy.,* 112 Wn.2d 68, 768 P.2d 462 (1989) (holding that a litigant's taking claim was not ripe because of a failure to exhaust administrative remedies); *Orion Corp. v. State,* 109 Wn.2d 621, 747 P.2d 1062 (1987) (litigant's taking claim ripe because further administrative appeals would be futile), *cert. denied,* 486 U.S. 1022 (1988); *Department of Ecology v. Kirkland,* 84 Wn.2d 25, 523 P.2d 1181 (1974) (issue ripe for review because administrative action was final). It seems that the dissent has confused the issue of ripeness with the question of whether the church's claim is meritorious.

## II

The majority's conclusion that application of this ordinance to this church constitutes a free exercise violation is correct because the church has shown that application of the ordinance to it greatly diminishes the value of its principal asset. As the dissent states, adopting the City's construction of its own ordinance will avoid the necessity of deciding the question of whether state approval of the church's modification of its building violates the First Amendment. But the issue of whether the ordinance violates the constitution because of its impact on church finances requires a constitutional decision.

Prior to the United States Supreme Court's decision in *Jimmy Swaggart Ministries v. Board of Equalization,* __ U.S. __, 107 L. Ed. 2d 796, 110 S. Ct. 688 (1990), Supreme Court precedent seemed to prohibit the imposition of a financial burden on the practice of religion. The Supreme Court had struck down a license tax on Jehovah's Witnesses and a tax on the sale of religious materials because these taxes burdened the free exercise of religion. *See*

*Murdock v. Pennsylvania,* 319 U.S. 105, 319 U.S. 166, 87 L. Ed. 1292, 87 L. Ed. 1330, 63 S. Ct. 870, 63 S. Ct. 882, 63 S. Ct. 891, 146 A.L.R. 81 (1943); *Follett v. McCormick,* 321 U.S. 573, 88 L. Ed. 938, 64 S. Ct. 717 (1944). Because of this it appeared that a land use restriction imposed specifically on a church causing gross diminution in the value of its principal asset might violate the free exercise clause.[9]

The Supreme Court's decision in *Swaggart,* handed down after this case was argued, shows that a financial burden does not constitute a per se free exercise violation. The Court upheld the application of a tax on the distribution of literature to the sales operations of the Swaggart ministry. It distinguished *Murdock* and *Follett* on the grounds that the taxes struck down in those cases constituted prior restraints on religious activities.[10]

It went on to limit its decision by leaving open the argument that a more onerous tax imposed upon a church could interfere with religious activity and constitute a free exercise violation. It had to leave this argument open because in *Murdock* the Court had indicated that the sheer weight of a flat tax could unconstitutionally crush evangelicalism. *Murdock,* 319 U.S. at 115.

Our precedent and the precedent of the New York Court of Appeals provides useful guidance to the proper evaluation of the effects of financial burdens imposed by land–use

---

[9]The comments of Justices Scalia, Rehnquist and Kennedy in their dissent in *Texas Monthly, Inc. v. Bullock,* 489 U.S. 1, 103 L. Ed. 2d 1, 109 S. Ct. 890 (1989) demonstrate this. The *Texas Monthly* Court invalidated a tax exemption for sales of religious periodicals as violating the establishment clause of the First Amendment. *Texas Monthly,* 109 S. Ct. at 894. The dissenters noted that *Murdock* and *Follett* might require a tax exemption for religious periodicals lest a free exercise violation occur. *Texas Monthly,* at 908. The same logic would require an exemption for land use controls upon churches which create a financial burden.

[10]One of the decisions in *Texas Monthly, Inc. v. Bullock, supra,* anticipated this development. Justices Brennan, Marshall, and Stevens limited *Murdock* in much the same way as the *Swaggart* decision. *Texas Monthly,* 109 S. Ct. at 893. But their views on that point did not command a majority until the *Swaggart* decision.

restrictions on the free exercise of religion. This topic necessarily requires development by state courts because the United States Supreme Court has never decided a land–use case involving a church's free exercise claim.[11] Indeed, until recently the Court had decided few cases involving burdens upon churches as institutions as opposed to burdens on individuals. *See Sumner v. First Baptist Church,* 97 Wn.2d 1, 16–17, 639 P.2d 1358 (1982) (Dolliver, J., dissenting) (describing the inapplicability of Supreme Court precedents cited by the majority).

In *Sumner v. First Baptist Church, supra,* this court held that the application of a building code ordinance to a church school presented a free exercise claim. The plurality stated that the practical effect of uncompromising application of the building code would be to close down the church operated school. *Sumner,* 97 Wn.2d at 7. The dissent pointed out that it might not have this effect; instead, the defendant might choose to come up to code. *Sumner,* at 20. The court remanded the case to see if the church's needs might be accommodated with the need for safety. *Sumner,* at 8–10.

*Sumner* supports the proposition, implicit in *Murdock* and *Follett,* that regulations imposing financial burdens on churches can create a free exercise claim. Because the burden created in this case is so much greater than the burden imposed in *Sumner,* we must sustain the church's challenge in this case.

Land–use restrictions interfere with religious practice, not religious belief. *See* Comment, *Zoning Ordinances Affecting Churches: A Proposal for Expanded Free Exercise Protection,* 132 U. Pa. L. Rev. 1131, 1149 (1984). But

---

[11]The Court's decision in *Lyng v. Northwest Indian Cemetery Protective Ass'n,* 485 U.S. 439, 99 L. Ed. 2d 534, 108 S. Ct. 1319 (1988) did not involve a church. In that case, the Supreme Court overturned a Ninth Circuit ruling forbidding upgrading a road and allowing a timber harvest which would interfere with Indian rituals linked to the land. The Court held that the free exercise clause does not restrain the government's use of government–owned land. It is thus of no use in deciding the case at bar.

religion is to some extent a communal matter. Ritual in some religions is inseparable from the spiritual experience of faith. An assembly of adherents is essential to creation of a unified community with a shared spiritual life. *See* Comment, at 1149–50. The free exercise clause protects religious practice as well as belief.

For these reasons, the law protects a church's ability to function as an institution. To some extent, it necessarily protects a church's finances. As the Supreme Court said in *Murdock,* "It is plain that a religious organization needs funds to remain a going concern." *Murdock,* 319 U.S. at 111. If a land–use restriction interferes markedly with a church's ability to perform its mission, the restriction may have to yield. *See Sumner* (land use regulation must allow church school to function at its present location); *State ex rel. Wenatchee Congregation of Jehovah's Witnesses v. Wenatchee,* 50 Wn.2d 378, 312 P.2d 195 (1957) (requiring special use permit for a church zoned out of a residential area); 82 Am. Jur. 2d *Zoning and Planning* § 154 (1976) (showing that most states have held zoning ordinances severely restricting church construction unconstitutional).

Although I think that our decision in *Sumner* compels us to rule in First Covenant's favor in the instant case, I write separately to urge that we apply a different approach in future cases. In light of *Swaggart,* we ought to require a very specific showing of hardship to justify exemption from land use restrictions in the future.

New York's courts require that landmark designation not prevent or seriously interfere with the carrying out of a church's religious and charitable purposes. *See Lutheran Church in Am. v. New York,* 35 N.Y.2d 121, 131, 316 N.E.2d 305, 359 N.Y.S.2d 7 (1974); *Church of St. Paul & St. Andrew v. Barwick,* 67 N.Y.2d 510, 530, 496 N.E.2d 183, 505 N.Y.S.2d 24 (Meyer, J., dissenting), *cert. denied,* 479 U.S. 985 (1986).

We should adopt the New York test as the means of evaluating free exercise claims in land use. While imposition of a financial burden does not per se create a free

exercise problem, the free exercise clause does not allow the state to impose financial burdens throttling religious practice. *See Swaggart,* 107 L. Ed. 2d at 811; *Murdock,* 319 U.S. at 111, 115.

The New York cases have not outlawed the application of land–use restrictions to churches. Instead, the cases permit relief from the strictures of ordinances when they genuinely interfere with a church's ability to perform its mission. For example, in *Westchester Reform Temple v. Brown,* 22 N.Y.2d 488, 239 N.E.2d 891, 293 N.Y.S.2d 297 (1968), the New York Court of Appeals required the zoning authorities to modify a setback requirement interfering with a needed expansion of a synagogue. The court relied heavily on the "undisputed fact . . . that the present facilities must be expanded to meet the increasing needs of the congregation." *Westchester,* at 492. It rested its opinion on First Amendment grounds. *See also Jewish Reconstructionist Synagogue v. Roslyn Harbor,* 38 N.Y.2d 283, 342 N.E.2d 534, 379 N.Y.S.2d 747 (1975), *cert. denied,* 426 U.S. 950 (1976) (requiring special use permit for synagogue in residential area).

On the other hand, the New York Court of Appeals rejected the argument that a decline in market value alone constituted a free exercise violation in *Society for Ethical Culture v. Spatt,* 51 N.Y.2d 449, 456, 415 N.E.2d 922, 434 N.Y.S.2d 932 (1980) ("there simply is no constitutional requirement that a landowner always be allowed his property's most beneficial use"). Nevertheless, a landmark ordinance cannot be applied to prohibit a church from realizing sufficient profits to move or replace its building if it becomes unsuitable to its needs. *See Lutheran Church in Am. v. New York,* 35 N.Y.2d at 132 (prohibiting landmark designation when church wished to demolish outmoded building and obtain a new one).

Our decision in *Sumner* and the uncontested gross diminution of the value of its property justify the majority's

decision in this case. In light of *Swaggart,* we should apply the New York approach to future cases.

DURHAM, J., and PEARSON, J. Pro Tem., concur with UTTER, J.

DOLLIVER, J. (dissenting)—The issue before the court is whether the Seattle landmarks preservation ordinance 106348 (Seattle Municipal Code 25.12), under the authority of which the church building owned by and housing the plaintiff has been declared a landmark (*see* Seattle ordinance 112425), unconstitutionally impinges upon plaintiff's right to its free exercise of religion. U.S. Const. amend. 1; *see also* Const. art. 1, § 11 (amend. 34). I would hold that it does not.

In contrast to the extended analysis of the majority, I believe the case can be decided easily and summarily. Particularly in cases of this nature the court should render a decision only on those issues necessary to decide the case.

The pertinent language of the ordinance designating the First Covenant Church building as a landmark (Seattle ordinance 112425) is as follows:

> [N]othing herein shall prevent any alteration of the exterior when such alterations are necessitated by *changes in liturgy,* it being understood that the owner is the exclusive authority on liturgy and is the decisive party in determining what architectural changes are appropriate to the liturgy. When alterations necessitated by changes in liturgy are proposed, the owner shall advise the Landmarks Preservation Board in writing of the nature of the proposed alterations and, the Board shall issue a Certificate of Approval. Prior to the issuance of any Certificate, however, the Board and owner shall jointly explore such possible alternative design solutions as may be appropriate or necessary to preserve the designated features of the landmark.

(Italics mine.)

In its motion for summary judgment, defendant stated:

> Any changes that First Covenant chooses to make to the exterior of the structure *for religious purposes* are exempted from the normal landmarks review and approval requirement. As

written, therefore, the imposed controls cannot interfere with First Covenant's free exercise of religion.

(Italics mine.)

By this statement, which is surely in the interest of the plaintiff, the City has given its interpretation of the term "liturgical exception" in the ordinance designating the First Covenant Church as a landmark. Thus, all this court need do is confirm the interpretation of the City, and the City will be bound to that position. If this is done, the ordinance on its face would not threaten the use made of the building by the congregation or changes made in the exterior of the building so long as any uses or changes are for religious purposes. Since this, as I understand it, is the real concern of the plaintiff, if this approach were adopted, the case of the plaintiff would collapse.

As to other questions which plaintiff may have as to the validity of the ordinance, there is neither a justiciable controversy (*Spokane v. Taxpayers,* 111 Wn.2d 91, 758 P.2d 480 (1988)) nor is the matter ripe for litigation (*Abbott Labs. v. Gardner,* 387 U.S. 136, 148–49, 18 L. Ed. 2d 681, 87 S. Ct. 1507 (1967)). Finally, to suggest that the requirement the church and landmarks board "shall jointly explore such possible alternative design solutions as may be appropriate or necessary to preserve the designated features of the landmark" (majority, at 408) is an excessive burden on the "free exercise of religion" is to trivialize the great protections of the First Amendment.

I would affirm the trial court. This court should by its opinion confirm the interpretation by the City of Seattle landmarks preservation ordinance 106348 and hold the ordinance does not apply to any changes made to the First Covenant Church for "religious purposes". The discussion of other issues raised by the landmarks preservation ordinance, including the effect of a decision by plaintiff to use

or sell its property for "nonreligious purposes", should wait until another day.

BRACHTENBACH and SMITH, JJ., and BAKER, J. Pro Tem., concur with DOLLIVER, J.

Reconsideration denied September 12, 1990.