21 P.3d 357 (2001)
Jay BRAUSE and Gene Dugan, Appellants,
v.
STATE of Alaska, DEPARTMENT OF HEALTH & SOCIAL SERVICES, Bureau of Vital Statistics, and the Alaska Court System, Appellees.
No. S-9376.
Supreme Court of Alaska.
April 17, 2001.
Robert H. Wagstaff, Anchorage, for Appellants.
John B. Gaguine, Assistant Attorney General, Bruce M. Botelho, Attorney General, Juneau, for Appellees.
Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

OPINION
MATTHEWS, Justice.
The underlying issue in this case is whether Jay Brause and Gene Dugan, a same-sex couple who are precluded from marrying, can *358 be denied benefits which are by law available only to married people. The superior court dismissed this case as to this issue, based on the State's contention that Brause and Dugan's complaint did not challenge the denial of any specific benefit to them and they did not show that they had standing to challenge the denial of any specific benefit. The court's dismissal was "without prejudice to subsequent filings" "where a particular right is at issue and being challenged  or a particular benefit." Without first seeking to amend their complaint to allege that they were denied specific benefits, Brause and Dugan appeal. We affirm because the superior court did not abuse its discretion in concluding that no actual controversy ripe for adjudication had been pleaded.
Brause and Dugan's complaint contains three counts. The first two counts challenge on state constitutional grounds the State's refusal under existing Alaska statutes to grant them a marriage license. The adoption of article I, section 25 of the Alaska Constitution, effective January 3, 1999, mooted these counts. Now, as a matter of state constitutional law, "[t]o be valid or recognized in this State, a marriage may exist only between one man and one woman."[1]
Count 3 challenges, among other things, on state and federal constitutional grounds AS 25.05.013(b), which provides: "A same-sex relationship may not be recognized by the state as being entitled to the benefits of marriage." Count 3 does not allege that appellants have been denied any specific benefits. It alleges generally that
.013 violate[s] the Constitutions of the State of Alaska and the United States inasmuch as persons of the same sex are denied the due process of law, equal protection of law, recognition of their privacy, full faith and credit, and the equal protection of the laws as guaranteed by the Constitutions of Alaska and the United States.
This allegation is followed by a request for a declaration that section .013 "violates the Constitutions of the State of Alaska and the United States."

STANDARD OF REVIEW
Alaska Statute 22.10.020(g) grants to superior courts the power to issue declaratory judgments in cases of actual controversy. The language of the statute makes it explicit that whether to issue a declaration is a discretionary decision committed to the superior court.[2] This court has previously noted that "judicial discretion was intended to play a significant role in the administration [of the declaratory judgment act]."[3] Therefore we will reverse a superior court's dismissal of a declaratory judgment action which is based on prudential grounds only when we find that the superior court abused its discretion.

WAS THERE AN "ACTUAL CONTROVERSY"?
Under AS 22.10.020(g) the superior court, "[i]n case of an actual controversy ... upon the filing of an appropriate pleading, may declare the rights and legal relations of an interested party seeking the declaration ...." This statute explicitly requires "an actual controversy."
The "actual controversy" language in AS 22.10.020(g) reflects a general limitation on the power of courts to entertain cases; similar language is used in federal law.[4] It encompasses a number of more specific reasons for not deciding cases, including lack of standing, mootness, and lack of ripeness.[5] Although these are interrelated doctrines, they also have distinct elements.[6] We believe *359 that it was not an abuse of discretion to dismiss the complaint in this case on lack-of-ripeness grounds.
The ripeness doctrine requires a plaintiff to claim that either a legal injury has been suffered or that one will be suffered in the future.[7] The degree of immediacy of a prospective injury needed to satisfy the ripeness doctrine has not been systematically explored in our case law. Instead, our cases contain statements such as "`[a]dvisory opinions' are to be avoided,"[8] or "[t]he ripeness doctrine forbids judicial review of `abstract disagreements,'"[9] or "courts should decide only `a real, substantial controversy,' not a mere hypothetical question."[10] This lack of particularity is not surprising, for there is no set formula that can identify whether a case is or is not ripe for decision. Instead, a number of factors must be considered.
According to Federal Practice and Procedure, a leading text on federal jurisdiction, the central concern of ripeness "is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all."[11] This text goes on to set out both abstract and practical formulations of ripeness. The former is "whether ... there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[12] The more practical formulation is said to be: "[R]ipeness turns on `the fitness of the issues for judicial decision' and `the hardship to the parties of withholding court consideration.'"[13]
Federal Practice and Procedure discusses the factors which underlie the ripeness doctrine:
The central perception is that courts should not render decisions absent a genuine need to resolve a real dispute. Unnecessary decisions dissipate judicial energies better conserved for litigants who have a real need for official assistance. As to the parties themselves, courts should not undertake the role of helpful counselors, since refusal to decide may itself be a healthy spur to inventive private or public planning that alters the course of possible conduct so as to achieve the desired ends in less troubling or more desirable fashion. Defendants, moreover, should not be forced to bear the burdens of litigation without substantial justification, and in any event may find themselves unable to litigate intelligently if they are forced to grapple with hypothetical possibilities rather than immediate facts. Perhaps more important, decisions involve lawmaking. Courts worry that unnecessary lawmaking should be avoided, both as a matter of defining the proper role of the judiciary in society and as a matter of reducing the risk that premature litigation will lead to ill-advised adjudication. These concerns translate into an approach that balances the need for decision against the risks of decision. The need to decide is a function of the probability and importance of the anticipated injury. The risks of decision are measured by the difficulty and sensitivity of the issues presented, and by the need for further factual development to aid decision.[14]
*360 In the present case Brause and Dugan claim on appeal that AS 25.05.013(b) denies them at least 115 separate rights which are afforded to people who are able to marry. These include, Brause and Dugan argue, "the denial of health coverage, forms of insurance, equal participation in pension and retirement plans, as well as testamentary and property rights." There is no doubt that at least in some circumstances married partners have rights that are denied unmarried domestic partners, and the subjects specifically identified by Brause and Dugan may be areas where inequality exists. But lacking in Brause and Dugan's brief is any assertion that they have been or in their current circumstances that they will be denied rights that are available to married partners.
The State argues that AS 25.05.013(b) is a "purely symbolic" statement lacking in "independent legal significance." The State contends that AS 25.05.013(b) does not deprive Brause and Dugan of rights, rather "what excludes [them] from the `115 separate rights' and the `benefits of marriage' is the language of each of the statutes ... creating rights and benefits based upon marital status...." It is one or more of these statutes that may be challenged, the State continues, but the challenge must be mounted by parties who are substantially injured by the particular statute in question. Further, in such a case, the particular statute must be examined independently under the "sliding scale" analysis used by Alaska courts to test the constitutionality of statutes under the equal rights clause of the Alaska Constitution, and "[s]uch analysis cannot be applied to AS 25.05.013(b), the symbolic enactment." The State describes by contrast a more recently filed case pending in the superior court in Anchorage in which a number of same-sex couples, one of whom is employed by the State, allege that they are denied specific health insurance and pension benefits in violation of their constitutional rights to equal protection.
Given the level of abstraction of this case as presented, we believe that many of the considerations on which the doctrine of ripeness is based counsel in favor of dismissal. Without more immediate facts it will be difficult to deal intelligently with the legal issues presented. The issues themselves are difficult, presenting a case of first impression in Alaska. In order to grant relief to Brause and Dugan, the superior court would have to declare a statute unconstitutional. This is, of course, a power that courts possess. But it is not a power that should be exercised unnecessarily, for doing so can undermine public trust and confidence in the courts and be interpreted as an indication of lack of respect for the legislative and executive branches of government. Further, ruling on the constitutionality of a statute when the issues are not concretely framed increases the risk of erroneous decisions.
As Federal Practice and Procedure puts it, the various concerns underlying the doctrine of ripeness indicate that any ripeness decision requires a balance of the plaintiffs' "need for decision against the risks of decision."[15] To the extent that the need to decide is a function of the probability that they will suffer an anticipated injury, Brause and Dugan have failed to demonstrate such a need. The risks of decision, on the other hand, are considerable, measured as they are "by the difficulty and sensitivity of the issues presented, and by the need for further factual development to aid decision."[16] It was not an abuse of discretion for the superior court to conclude that the balance weighs in favor of the conclusion that this case is not ripe for adjudication and presents no actual controversy under AS 22.10.020(g).
The judgment of the superior court is AFFIRMED.
BRYNER, Justice, dissenting.
I disagree with the court's conclusion that the issue in this case is not ripe for adjudication; therefore I dissent. This court's standing jurisprudence indicates a willingness to adjudicate claims where the injury claimed is but "an identifiable trifle."[1] Here, Brause *361 and Dugan's claimed injury far exceeds the identifiable trifle necessary to give them standing and is sufficiently imminent to make their constitutional challenge of AS 25.05.013(b) ripe for an immediate decision.
I first note my opposition to the court's reliance on federal law as the law defining the doctrine of ripeness in Alaska.[2] In particular, the court turns to Federal Practice and Procedure for guidance on ripeness,[3] but that treatise reviews exclusively federal law. Our standing jurisprudence varies significantly from that of federal courts,[4] and our case law counsels against reliance on federal law: "instead of looking to federal courts,... this court should first look to its own precedent."[5]
This court's case law has developed the doctrine of ripeness among the interrelated issues of standing and mootness.[6] We have stated that the "basic requirement for standing in Alaska is adversity" of legal interests and that adversity can be satisfied by an "intangible" interest such as an "aesthetic or environmental interest."[7] And we have not required that prospective plaintiffs wait until an unavoidable injury occurs before Alaskan courts may render a declaratory judgment.[8]
In Johns v. Commercial Fisheries Entry Commission we stated that "the threat of future injury confers standing to seek judicial aid to forestall possible harm."[9] There, three applicants for fishing limited entry permits filed suit seeking a declaratory judgment regarding the "threatened loss of their right to enter the fishery" although none had yet been excluded.[10] Rejecting a rule of inevitability of harm, we stated: "We think it bad law and bad policy to approve a rule which shuts the courthouse doors until ... it may be too late to obtain meaningful judicial relief."[11]
Similarly, in Benesch v. Miller we did not force a candidate for the United States Senate to wait until after election day to challenge a statute he believed unconstitutionally restricted write-in candidates.[12] Reversing the trial court's finding that the claim was premature, we held that "an actual controversy exist[ed]" despite the fact that the injury had not yet occurred.[13]
Moreover, our case law establishes that a challenger need not plead specific facts of injury in order to seek review of the constitutionality of a statute. In Jefferson v. Asplund we addressed declaratory relief with respect to Jefferson's challenge of the actions of the Greater Anchorage Area Borough.[14] Regarding the availability of declaratory relief to Jefferson, we stated: "declaratory relief will be withheld when declarations are sought concerning hypothetical or advisory questions or moot questions. On the other hand, declaratory relief may be sought to determine the validity and construction of statutes and public acts."[15] We then held that Jefferson's claim that an Alaska statute *362 was illegal was ripe without facts showing the powers of the statute had been exercised.[16] Other states have reached the same conclusion.
The Washington Supreme Court in First Covenant Church, of Seattle, Washington v. City of Seattle reviewed a church's claims that Seattle's designation of a church as a landmark was unconstitutional.[17] The designation prevented the church from altering the exterior of the building or selling it without the approval of a landmarks commission.[18] Seattle argued that the church's claim was not ripe because it had not submitted a proposal for alteration or attempted to sell the building. The Washington Supreme Court rejected that argument: "The record before the court contains the factual background surrounding the designation of First Covenant Church and no additional facts need be developed to determine the constitutionality of that designation."[19]
In Advocates for Effective Regulation v. City of Eugene, the Oregon Court of Appeals addressed the question of whether a coalition of hazardous substance producers had a ripe claim to a declaratory judgment regarding a city charter amendment regulating and assessing fees against users of hazardous substances.[20] The court concluded the claim was ripe although no fee structure had been approved. It stated:
The exercise of judicial power requires a concrete controversy that is based on present facts, not hypothetical possibilities. A facial challenge to the validity of an enactment generally presents such a concrete controversy; the question is whether the challenged enactment is valid as written, as opposed to validly applied to a given set of facts.[21]
Our precedent establishes that Brause and Dugan's constitutional attack on AS 25.05.013(b) is ripe for adjudication without a specific claim of past injury. But, even if we apply the federal standard for ripeness, I believe that the case presented by Brause and Dugan meets that standard. Although federal ripeness jurisprudence "prevent[s] the courts ... from entangling themselves in abstract disagreements"[22] where the relevant factual situation is not adequately developed, it also recognizes that disputes that are purely legal "will not be clarified by further factual development" and are ripe for adjudication.[23]
In Thomas v. Union Carbide Agricultural Products Co., thirteen pesticide manufacturing firms challenged amendments to the Federal *363 Insecticide, Fungicide, and Rodenticide Act (FIFRA) that required the firms to consent to binding arbitration in order to qualify for compensation for involuntary sharing of information required by FIFRA.[24] Although only one of the firms had been subject to arbitration, the Supreme Court held that the other firms' claims were ripe stating: "One does not have to await the consummation of threatened injury to obtain preventative relief. If the injury is certainly impending, that is enough."[25] And in a decision issued during its current term, the Supreme Court has reconfirmed its adherence to this view of standing.[26] There, in a pre-enforcement review of air quality standards set by the Environmental Protection Agency (EPA) under the Clean Air Act, the Court rejected the EPA's argument that the claim was not ripe for review because the EPA had not implemented the standards: "The question before us here is purely one of statutory interpretation that would not `benefit from further factual development of the issues presented.'"[27]
Here, Brause and Dugan's claim presents a purely legal question: whether AS 25.05.013(b) is constitutional on its face. Further factual development will not help this court address that question. Brause and Dugan do not allege that the statute is unconstitutional as it might be applied to them in the future; they assert that it is unconstitutional now, and so subjects them to immediate harm. The constitutional injury that Brause and Dugan allege flows directly and immediately from AS 25.05.013(b)'s categorical denial of all benefits of marriage to samesex couples, not from an as-yet unrealized application to them of another statute's delineation of specific benefits. Hence, any uncertainty concerning whether they might eventually be denied health coverage based on their non-spousal relationship, for example, as opposed to being denied testamentary rights reserved to spouses, would have no effect on the legal analysis of AS 25.05.013(b)'s constitutionality. Just as the Union Carbide firms' claims were ripe without being subject to arbitration, Brause and Dugan's claim of facial unconstitutionality is ripe for immediate adjudication, without waiting until the provision is applied to deny them specific benefits.
Moreover, even assuming that the ripeness doctrine required a facial constitutional challenge to be accompanied by an immediate threat of unconstitutional application, Brause and Dugan's case would meet this requirement. To properly assess the risk of unconstitutional application, it is important to recognize the nature of the alleged constitutional problem. The court characterizes the problem as one involving the disparate treatment of married heterosexual couples, on the one hand, and unmarried same-sex couples, on the other: "The underlying issue in this case is whether ... same-sex couple[s] who are precluded from marrying[] can be denied benefits which are by law available only to married people."[28] But Brause and Dugan's constitutional claim does not confine itself to this form of discrimination.[29] What their claim more directly targets is Alaska's disparate treatment of two similarly situated groups of unmarried couples.
By prohibiting the state from extending "the benefits of marriage" only to persons involved in "a same-sex relationship"  rather than prohibiting marital benefits to all unmarried couples  AS 25.05.013(b) necessarily suggests that the state may confer some or all of those benefits on unmarried couples involved in heterosexual relationships. As I *364 see it, then, the bone of constitutional contention is AS 25.05.013(b)'s disparate treatment of unmarried homosexual and unmarried heterosexual couples: the statute categorically bars state agencies and officials from granting unmarried same-sex couples spousal benefits that those agencies and officials may routinely choose to extend to unmarried heterosexual couples.
If this form of discrimination is constitutionally impermissible, as Brause and Dugan allege it to be, then the danger that AS 25.05.013(b) might be unconstitutionally applied to them can hardly be dismissed as remote or hypothetical. For instance, among the statutory rights that Brause and Dugan argue they are denied by AS 25.05.013(b) is the right of a spouse to workers' compensation benefits. Brause and Dugan's point on this statute is strong given that this court has interpreted the workers' compensation statutes to require the payment of death benefits to a surviving opposite-sex domestic partner outside of a legal marriage.[30]
In Burgess Construction, a married couple had divorced, then reunited after the former husband had two other unsuccessful marriages.[31] The couple lived together, but never remarried. When the former husband died in a job-related accident, the former wife claimed benefits under the workers' compensation statutes. This court held that the workers' compensation statute's definition of "married" and "widow" included the unmarried former spouse.[32] This court stated: "While, for some purposes, [Lindley] would not have been recognized by the Alaska courts as married to the decedent, [she] qualifies for benefits as a `surviving wife' under [the] terms of the Alaska Workmen's Compensation Act."[33]
Notably, Justice Erwin in his concurrence in Burgess Construction disagreed with the majority's perceived reliance on the workers' compensation statutory definitions of "married" and "widow" to award benefits to the decedent's common law wife.[34] He stated that "after [Lindley's] divorce from the deceased and his remarriage," Lindley could only be characterized as a common law wife, not a legal wife.[35] He further reasoned that the "surviving wife" language in the statute obviously "referr[ed] to a legal wife" as defined by former AS 25.05.011.[36] But Justice Erwin also concluded that the benefit of the workers' compensation statute should be extended to Lindley outside the definition of a legal marriage based on equal protection grounds.[37]
If the statute awarded workers' compensation benefits to "legal" spouses but not to common law spouses, it would create two categories of similarly situated persons and impermissibly discriminate against those who did not participate in a formal marriage ceremony.[38] Justice Erwin found "no rational relationship between the legal formality of marriage ceremony and the purpose of the Alaska Workmen's Compensation Act, which compensates a dependent `spouse' for the death of a provider."[39] Viewed through the lens of Justice Erwin's concurrence, then, the majority opinion in Burgess Construction appears to have consciously extended a spousal benefit to an unmarried person based on her involvement in a heterosexual de facto spousal relationship.[40]
*365 Brause and Dugan cite the same statute at issue in Burgess Construction  now AS 23.30.215  as a violation of equal protection to same-sex couples. The definition of "married" under the workers' compensation statute is essentially unchanged since Burgess Construction and "includes a person who is divorced but is required by the decree of divorce to contribute to the support of the former spouse."[41]
This uncertainty alone should prompt the court to reach the merits of Brause and Dugan's case: assuming, as alleged, that AS 25.05.013(b)'s disparate treatment of samesex and heterosexual unmarried couples is unconstitutional, is it not a constitutionally cognizable injury that statutorily guaranteed benefits are extended to some unmarried opposite-sex couples, but are categorically denied to all similarly situated same-sex couples? Even under the most rigorous of ripeness standards, this question is ripe for decision.
Our case law interpreting Alaska's prohibitions against discrimination based on marital status further militates for reviewing Brause and Dugan's claim on its merits.[42] We have extended the protection against marital discrimination to unmarried couples: "state ... prohibitions against discrimination based on marital status protect the rights of unmarried couples."[43] Alaska Statute 25.05.013(b)'s language throws these holdings into doubt. This additional uncertainty provides an independent reason to address the merits of Brause and Dugan's claim.
The court expresses misgivings about "ruling on the constitutionality of a statute when the issues are not concretely framed."[44] It also voices its concern that, "[i]n order to grant relief to Brause and Dugan, the superior court would have to declare a statute unconstitutional."[45]
But in my view the court overstates the difficulty of deciding the constitutional question presented. There is certainly ample case law from other jurisdictions to guide this court's decision on the merits. And as already noted, framing this controversy more concretely would not help us resolve the issue of facial constitutionality. Moreover, the court's prediction that relief could be granted only by declaring AS 25.05.013(b) unconstitutional overlooks the less drastic possibility of a narrowing construction to avoid constitutional problems-an alternative that would comport with this court's expressed preference for interpreting a statute in a manner that renders it constitutional.[46]
The court's exaggeration of the difficulty that the constitutional issue in this case presents is especially apparent in light of the court's enthusiastic endorsement of the state's position that the challenged statute is "purely symbolic" and has no "independent *366 legal significance."[47] For if the statute indeed has no real significance, the state can have no particularly strong interest in enforcing it. Alaska's sliding-scale test of equal protection would then compel the conclusion that the statute should be declared invalid or given a limiting construction if it were shown to have even a mild tendency to chill the exercise of associational freedoms by those who might not be privy to the state's closely held view that the statute is all gums and no teeth. And in any event, the court's aversion for the prospect of having to declare AS 25.05.013(b) invalid  its preference for a case involving a claim of unconstitutionality as applied to a particular set of facts  seems unjustified as a jurisprudential matter: if the statute is indeed unconstitutional on its face, it would hardly suffice to declare it invalid only as it applies to a concretely framed factual setting.
In short, I believe that Brause and Dugan established a sufficiently concrete controversy when they asserted at oral argument that, as a same-sex couple, they have a legitimate interest in knowing whether AS 25.05.013(b) will remain on the books in Alaska.[48] By declaring their claim unripe until they suffer irreparable injury that they are capable of proving and are willing to redress through the lengthy process of post-injury litigation, the court unjustifiably deprives Brause and Dugan, all other similarly situated couples, and all otherwise interested Alaskans of a legal ruling that would enable them to make informed choices about how to organize their lives in Alaska and whether to continue to reside in this state if its law does in fact withhold from same-sex couples benefits that it would routinely extend to unmarried opposite-sex couples.
The court tries to diminish the legal impact of today's ruling by emphasizing that the question of whether to issue a declaratory judgment is a matter in which "judicial discretion was intended to play a significant role"[49] and by finding that, here, "it was not an abuse of discretion [for the trial court] to dismiss ... on lack-of-ripeness grounds."[50] But while decisions on ripeness undoubtedly involve judicial discretion, the trial court, as always, was obliged to exercise its discretion within the appropriate legal framework established by relevant case law. Here, as indicated above, this court's prior cases dealing with ripeness  as well as a significant body of cases decided by federal courts and courts in other states  point uniformly to the conclusion that Brause and Dugan's constitutional challenge is ripe for decision. Since the trial court's ruling is incompatible with Alaska's law of ripeness as it existed before today's opinion, the court's attempt to portray the trial court's ruling as a permissible exercise of discretion rings hollow.[51]
Because I believe that Brause and Dugan's claims are ripe for adjudication, I would decide the claims on the merits.[52]
NOTES
[1] Alaska Const. art. I, § 25.
[2] "In case of an actual controversy in the state, the superior court, upon the filing of an appropriate pleading, may declare the rights and legal relations of an interested party seeking the declaration, whether or not further relief is or could be sought." AS 22.10.020(g) (emphasis added).
[3] Jefferson v. Asplund, 458 P.2d 995, 997 (Alaska 1969).
[4] See Bowers Office Prods., Inc. v. University of Alaska, 755 P.2d 1095, 1096 (Alaska 1988).
[5] See id.
[6] "As compared to mootness, which asks whether there is anything left for the court to do, ripeness asks whether there yet is any need for the court to act. Both ripeness and mootness, moreover, could be addressed as nothing but the time dimensions of standing." 13A Charles Alan Wright, et al., Federal Practice and Procedure § 3532.1, at 101 (Supp.2000).
[7] See Bowers, 755 P.2d at 1099.
[8] Earth Movers of Fairbanks, Inc. v. State, Dep't of Transp. and Pub. Facilities, 824 P.2d 715, 718 (Alaska 1992).
[9] Standard Alaska Production Co. v. State, Dep't of Revenue, 773 P.2d 201, 210 n. 14 (Alaska 1989) (quoting Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)).
[10] State v. Patterson, 740 P.2d 944, 949 n. 18 (Alaska 1987) (quoting 13A Charles Alan Wright, et al., Federal Practice and Procedure § 3532.2, at 137 (2d ed.1984)).
[11] 13A Charles Alan Wright, et al., Federal Practice and Procedure § 3532, at 112 (2d ed.1984).
[12] Id. (quoting Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 506, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972)).
[13] Id. (quoting Pacific Gas & Elec. Co. v. State Energy Resources Conserv. & Devel. Commn'n, 461 U.S. 190, 201, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983)).
[14] Wright, et al., supra note 11, § 3532.1, at 114-15 (footnotes omitted).
[15] Id. at 115.
[16] Id.
[1] Bowers Office Prods., Inc. v. University of Alaska, 755 P.2d 1095, 1097 (Alaska 1988) (quoting Trustees for Alaska v. State, Dep't of Natural Resources, 736 P.2d 324, 327 (Alaska 1987)).
[2] Slip Op. at 359-360.
[3] See id. (quoting 13A Charles Alan Wright et al., Federal Practice and Procedure § 3532 (2d ed. 1984 & 2000 Supp.)).
[4] See Falcon v. Alaska Pub. Offices Comm'n, 570 P.2d 469, 474-75 (Alaska 1977) (recognizing that standing is not a constitutional limitation on jurisdiction of Alaska courts as in federal law); Bowers Office Prods., 755 P.2d at 1096-97.
[5] Bowers Office Prods., 755 P.2d at 1096 (emphasis added).
[6] See id.
[7] Id. at 1097 (quoting Trustees for Alaska, 736 P.2d at 327).
[8] See Johns v. Commercial Fisheries Entry Comm'n, 699 P.2d 334, 337-39 (Alaska 1985); Benesch v. Miller, 446 P.2d 400, 401-02 (Alaska 1968).
[9] 699 P.2d at 337 (emphasis added).
[10] Id. at 336-37.
[11] Id. at 338.
[12] 446 P.2d at 400-02.
[13] Id. at 402.
[14] 458 P.2d 995, 1001-02 (Alaska 1969).
[15] Id. at 999 (footnotes and citations omitted); accord Texas Dep't of Banking v. Mount Olivet Cemetery Ass'n, 27 S.W.3d 276, 282 (Tex.App. 2000) ("ripeness does not require an actual injury... [only] that an injury is likely to occur").
[16] See Jefferson, 458 P.2d at 1002. The statute-former AS 07.25.080  granted the borough chair the power to veto assembly actions.

This court cited Federal Practice & Procedure for the same proposition: "The complaint must allege conduct of the defendants which threatens or endangers some legal right of the plaintiff." Jefferson, 458 P.2d at 999 n. 25 (quoting 3 W. Barron & A. Holtzoff, Federal Practice and Procedure § 1269, at 319 (Wright rev.1958)) (emphasis added).
[17] 114 Wash.2d 392, 787 P.2d 1352 (1990), vacated, City of Seattle v. First Covenant Church of Seattle, Wash., 499 U.S. 901, 111 S.Ct. 1097, 113 L.Ed.2d 208 (1991), judgment reinstated by First Covenant Church of Seattle v. City of Seattle, 120 Wash.2d 203, 840 P.2d 174 (1992).
[18] See id., 787 P.2d at 1355.
[19] Id. at 1356.
[20] 160 Or.App. 292, 981 P.2d 368 (1999).
[21] Id., 981 P.2d at 373 (citations omitted); see also Hunt v. Superior Court, 21 Cal.4th 984, 90 Cal.Rptr.2d 236, 987 P.2d 705, 716 (1999) ("[T]he ripeness requirement does not prevent us from resolving a concrete dispute if the consequence of a deferred decision will be lingering uncertainty in the law, especially when there is widespread public interest in the answer to a particular legal question.").
[22] Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (quoting Abbott Lab. v. Gardner, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)).
[23] Id. at 581, 105 S.Ct. 3325; see also Pavey v. University of Alaska, 490 F.Supp. 1011, 1015 (D.Alaska 1980) (university not required to risk sanctions affecting student athletes to challenge conflicting rules of NCAA and Association for Intercollegiate Athletics for Women to have ripe claim to declaratory judgment) (cited in 10B Wright, supra note 3, § 2757, at 492 n. 30); Johnson v. Rockefeller, 58 F.R.D. 42, 46-47 (S.D.N.Y.1972) (inmates did not have to bring failed suit challenging denial of access to courts to have ripe controversy over statute denying access) (cited in 10B Wright, supra note 3, § 2757, at 494-95).
[24] See Thomas, 473 U.S. at 571-76, 105 S.Ct. 3325.
[25] Id. at 581, 105 S.Ct. 3325 (quoting Regional Rail Reorganization Act Cases, 419 U.S. 102, 143, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974)).
[26] See Whitman, Admin. of EPA v. American Trucking Ass'n, 531 U.S. 457, ___, 121 S.Ct. 903, 915-16, 149 L.Ed.2d 1 (2001).
[27] Id., 121 S.Ct. at 915 (quoting Ohio Forestry Ass'n v. Sierra Club, 523 U.S. 726, 733, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998)).
[28] Slip Op. at 357-358.
[29] In fact, now that the Alaska Constitution allows marriages "only between one man and one woman," Alaska Const. art. I, § 25, this form of discrimination is to a large extent beyond state constitutional challenge.
[30] See Burgess Constr. Co. v. Lindley, 504 P.2d 1023, 1024-25 (Alaska 1972).
[31] See id. at 1023-24.
[32] See id. at 1024. The court acknowledged that the statute did not define "surviving wife" before concluding that Lindley was "married" under the statutory definition of that term. Therefore, "[i]t follow[ed] that under the Act [Lindley] would be regarded as his `surviving wife.' She qualifies as a `widow' for she was living with decedent at the time of his death and was dependent upon him for support." Id.
[33] Id. at 1025.
[34] See id.
[35] Id.
[36] Id.
[37] See id. at 1026.
[38] See id.
[39] Id.
[40] The Burgess Construction majority's logical leap of faith from "married" to "surviving wife" to "widow" can only be explained by the court's reliance on Lindley's cohabitation and financial dependence on the decedent  a fact pattern identical to many long-term cohabiting heterosexual and homosexual couples.
[41] AS 23.30.395(19). Compare id. with former AS 23.30.265(15) (defining married to "include[] a person who is divorced but is required by the decree of divorce to contribute to the support of his former spouse").
[42] Brause and Dugan cite AS 18.80.220(c)(1). That statute uses the same terms  "marital status" and "changes in marital status"  as other statutes in the chapter prohibiting discrimination, including AS 18.80.240, the statute applied in Foreman v. Anchorage Equal Rights Comm'n, 779 P.2d 1199 (Alaska 1989). See AS 18.80.060,.200, .210, .220, .240, .250.
[43] Foreman, 779 P.2d at 1203; see also University of Alaska v. Tumeo, 933 P.2d 1147, 1152-53 (Alaska 1997); Swanner v. Anchorage Equal Rights Comm'n, 874 P.2d 274, 278 (Alaska 1994); cf. Wood v. Collins, 812 P.2d 951, 957 (Alaska 1991) (adopting "conclusion of law that, for unmarried cohabitants, the intent of the parties will control property division for property acquired before separation").
[44] Slip Op. at 360.
[45] Slip Op. at 360.
[46] See Boucher v. Engstrom, 528 P.2d 456, 462-63 (Alaska 1974), overruled on other grounds by McAlpine v. University of Alaska, 762 P.2d 81, 85 (Alaska 1988); see also 2A Norman J. Singer, Sutherland Statutory Construction § 45:11, at 75-76 (6th ed.2000). This alternative would also square with Jefferson v. Asplund, 458 P.2d 995, 998-99 (Alaska 1969), where we stated that "declaratory relief may be sought to determine the validity and construction of statutes and public acts."
[47] Slip Op. at 360.
[48] This right to know whether AS 25.05.013(b) is facially constitutional cannot be resolved by assurances, such as those given by the attorney general's office at oral argument, that the state will not enforce the statute in a discriminatory manner. As a legal matter, these assurances will have no binding effect in future cases; and as a practical matter, they can provide no realistic protection against the possibility of discriminatory application by myriad state officials who are called upon daily to apply the ostensibly valid statute in specific factual settings.
[49] Slip Op. at 358 (quoting Jefferson, 458 P.2d at 997).
[50] Slip Op. at 359.
[51] Indeed, the court overlooks the fact that the very case it cites for the proposition that trial courts have discretion in determining when to grant declaratory relief  Jefferson, 458 P.2d at 997, cited in Slip Op. at 358 n. 3  found an abuse of discretion and proceeded to decide the case on its merits. See id. at 1002.
[52] Although the superior court did not address the merits of Brause and Dugan's constitutional claim, the claim presents pure questions of law that this court could resolve without a remand. The state, however, has confined its briefing to the issues of ripeness and standing and has not addressed the merits of Brause and Dugan's constitutional challenge to AS 25.05.013(b). Accordingly, I would order supplemental briefing before ruling on the merits. Because resolution on the merits would be premature at this stage of the proceedings, my dissent is confined to the issue of ripeness and expresses no opinion on the underlying merits.