*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| EXXON MOBIL CORPORATION, | ) | |
| | ) | Supreme Court No. S-17674 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-18-07193 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, | ) | |
| DEPARTMENT OF REVENUE, | ) | No. 7536 – June 11, 2021 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Eric. A. Aarseth, Judge.

Appearances: Jonathan E. Iversen and S. Lane Tucker, Stoel Rives LLP, Anchorage, for Appellant. Mary Hunter Gramling and Patrick Sherry, Assistant Attorneys General, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices. [Borghesan, Justice, not participating.]

WINFREE, Justice.

## I. INTRODUCTION

An oil producer challenged a Department of Revenue advisory bulletin interpreting the oil tax code, arguing that the bulletin violated the Alaska Administrative Procedure Act (APA) and seeking a declaratory judgment that the interpretation was contrary to law. We hold that the advisory bulletin cannot be challenged under the APA

because it is not a regulation and that a declaratory judgment is not available because the tax dispute between the parties is not ripe. We therefore affirm the superior court's grant of summary judgment to the Department.

## II. FACTS AND PROCEEDINGS

### A. Facts

#### 1. Overview of oil production tax and tax credits

Oil and gas producers in Alaska have been subject to an annual production tax since 1977.[1] In 2006 the legislature amended the statutory framework to establish a minimum production tax that North Slope oil producers must pay.[2] The oil production tax statutes have included a variety of tax credits that North Slope producers may obtain or earn and then use to reduce or eliminate their total tax liabilities, even below the minimum tax amount. For example, producers previously could earn tax credits for certain capital expenditures[3] and exploration activities,[4] and those producing less than a specified amount of oil may earn what are often referred to as small producer credits to offset their tax liabilities.[5]

In 2013 the legislature added two new oil production tax credits: the

---

[1]    Ch. 136, § 1, SLA 1977 (codified at AS 43.55.011(e)).

[2]    Ch. 2, § 5, TSSLA 2006; (codified at AS 43.55.011(f)) (applying to production "north of 68 degrees North latitude").

[3]    AS 43.55.023(a)(3). For North Slope production this credit applies only to capital expenditures made before January 1, 2014. *Id.*

[4]    AS 43.55.025. For North Slope production this credit applies only to exploration activities between June 30, 2008 and July 1, 2016. AS 43.55.025(b)(1).

[5]    AS 43.55.024(c).

"$5 per barrel" tax credit[6] and the "sliding scale" tax credit.[7] The $5 per barrel tax credit gives producers a tax credit of $5 for each barrel of taxable oil meeting certain criteria.[8] The sliding scale tax credit, which varies from $0 to $8 per barrel depending on the price of oil, gives producers a tax credit for each barrel of taxable oil that does not meet the criteria for the $5 per barrel tax credit.[9] When these credits were established, the capital expenditure credit previously available to North Slope producers was eliminated.[10]

As originally proposed in the 2013 legislature, and as with other tax credits available to North Slope producers at the time, a producer would be prohibited from using the sliding scale tax credit to reduce its tax liability below zero.[11] The bill's sponsor later introduced an amendment to "make sure that the floating per barrel credit does not run the total tax bill below the minimum tax[, s]o it ensures that [the] 4 percent

---

[6]     Ch. 10, § 21, SLA 2013 (codified at AS 43.55.024(i)).

[7]     *Id.* (codified at AS 43.55.024(j)).

[8]     AS 43.55.024(i).

[9]     AS 43.55.024(j).

[10]     *See* ch. 10, § 14, SLA 2013 (codified at AS 43.55.023(a)(3)(A)) (adding sunset provision to capital expenditure credit for North Slope production).

[11]     *See* House Res. Standing Comm., Work Draft of Proposed S.B. 21, 28th Leg., 1st Sess. at § 25 (Apr. 2, 2013) (codified at AS 43.55.024(j)) ("A tax credit authorized by this subsection may not reduce a producer's tax liability for a calendar year under [the production tax] to below zero."); *cf., e.g.,* AS 43.55.025(i)(1) (2013) (exploration tax credit "may not be applied to reduce a taxpayer's tax liability under [the production tax] below zero for a calendar year"); AS 43.55.024(g) (2013) (small producer credit "may not be applied to reduce a producer's tax liability for any calendar year under [the production tax] below zero").

minimum tax on the gross is retained — no matter what — within the legacy fields."[12] The amendment provided that a sliding scale tax credit "may not reduce a producer's tax liability for a calendar year under [the production tax] below the [minimum tax]."[13] The amendment passed without objection, and the bill was signed into law in June 2013.[14]

The Department thereafter amended some of its regulations and added 15 Alaska Administrative Code (AAC) 55.335(g), providing:

> If a producer's application of tax credits other than a [sliding scale tax credit] against a [production tax] reduces the producer's tax liability to the amount calculated for a calendar year after 2013 under [the minimum tax] or less, the producer may not apply a [sliding scale tax credit] against the tax for that calendar year. If a producer's application of tax credits other than a [sliding scale tax credit] against a [production tax] does not reduce the producer's tax liability to the amount calculated for a calendar year after 2013 under [the minimum tax] or less, the producer may apply against the tax no more than the portion of a [sliding scale tax credit] that is equal to the difference between the amount calculated for the calendar year under [the minimum tax] and the tax liability after reduction by application of tax credits other than a [sliding scale tax credit]. In calculating that reduction, if the tax credits to be applied include one or more tax credits subject to a percentage limitation . . . , calculation of the percentage limitations under 15 AAC 55.375(a) must take

---

[12] Minutes, House Res. Standing Comm. Hearing on S.B. 21, 28th Leg., 1st Sess. 1:52-1:54 a.m. (Apr. 4, 2013) (testimony of Rep. Feige, sponsor of Amendment 33).

[13] *See* Committee Substitute for Senate Bill (C.S.S.B.) 21 (Res), 28th Leg., 1st Sess. (2013); House Res. Standing Comm., Conceptual Amendment 33, 28th Leg., 1st Sess. (Apr. 4, 2013).

[14] Minutes, House Res. Standing Comm. Hearing on S.B. 21, 28th Leg., 1st Sess. 1:52-1:54 a.m. (Apr. 4, 2013); 2013 Senate Journal 1291.

account of any [sliding scale] tax credit or portion of a [sliding scale] tax credit . . . the producer will apply against the producer's tax, to the extent allowed under this subsection.[15]

The Department's prior regulations had provided a default ordering for applying oil tax credits but permitted producers to apply their tax credits in any order they chose.[16] But when the Department promulgated 15 AAC 55.335(g), it amended its other regulations to provide that the default ordering and a producer's ability to order its tax credits were "subject to 15 AAC 55.335(g)."[17]

### 2. The Department's 2017 nonbinding advisory bulletin

The Department is statutorily authorized to issue nonbinding interpretive advisory bulletins "for the information and guidance of producers, explorers, and other interested persons."[18] In 2017 the Department issued an advisory bulletin in response to "inquiries from various taxpayers and holders of tax credit certificates" regarding the applicability of tax credits against the production tax and "under what circumstances, if any, a tax credit certificate may be used to reduce a taxpayer's tax liability below [the minimum tax]." The Department explained in the advisory bulletin that, based on the plain language of the tax credit statute, the relevant legislative history, the commutative

---

[15] Notice of Adopted Changes to Regulations of the Department of Revenue, Tax Division, Register 208 (Jan. 2014) 33-34 (codified at 15 AAC 55.335(g)).

[16] Former 15 AAC 55.375(a), (c) (2012).

[17] Notice of Adopted Changes to Regulations of the Department of Revenue, Tax Division, Register 208 (Jan. 2014) 34-35 (codified at 15 AAC 55.375(a),(c)).

[18] AS 43.55.110(g).

property of math,[19] and its regulations, a producer choosing to use a sliding scale tax credit to reduce its tax liability could not reduce its tax liability below the minimum tax. The Department explained that this was the case even though a producer could use a combination of other tax credits to reduce its liability to zero. According to the Department, using the sliding scale tax credits, alone or in combination with other tax credits, "creates a 'hard floor' as limited by [the minimum tax] to the effect that, 'no matter what,' the '4 percent minimum tax on the gross is retained.' " The Department stated that the bulletin was "issued for the information and guidance of producers, explorers, and other interested persons . . . and as provided in AS 43.55.110(g), interpretations stated in this advisory bulletin are not binding on the Department or others." The advisory bulletin's practical effect is that it cautions producers about using sliding scale credits to reduce tax liability to the minimum amount and then using other tax credits to reduce tax liability below the minimum amount.

### 3. Enforcement of the oil tax statutes

Production tax payments are made in monthly installments, and tax returns are filed monthly.[20] The Department is authorized to audit returns to determine whether a producer has paid the correct tax amount.[21] If the Department determines that a producer has failed to pay the correct amount, the Department assesses the amount due (an assessment).[22] The Department generally must make an assessment within six years

---

[19]     *Commutative*, BLACK'S LAW DICTIONARY (9th ed. 2009) ("The substitution of one form of payment for another.").

[20]     AS 43.55.020(a)(5); 15 AAC 55.520(a). Producers also are required to file an annual return. *See* AS 43.55.030(a).

[21]     *See* AS 43.55.040-.060.

[22]     AS 43.05.245.

after a return is filed.[23]  A producer disputing an assessment may request an informal conference with the Department.[24]  In limited circumstances a producer may appeal an informal conference's outcome directly to the superior court, but generally a producer first must seek review in an administrative hearing.[25]  A producer then may appeal an administrative hearing's outcome to the superior court.[26]

## B.    Proceedings

Exxon Mobil Corporation is a New Jersey corporation conducting oil and gas exploration and development.  Exxon is subject to the  production tax on its oil and gas activities in Alaska, and it is subject to the minimum production tax.[27]  Exxon has tax credits it can use to reduce its tax liability, including sliding scale tax credits under AS 43.55.024(j) and $5 per barrel tax credits under AS 43.55.024(i).

Exxon brought suit against the Department, seeking relief under AS 44.62.300(a), the judicial review provision of the APA, and AS 22.10.020(g), the Declaratory Judgment Act.  Exxon alleged that issuing the advisory bulletin violated APA rulemaking requirements, that the bulletin is contrary to law, and that equitable estoppel should bar the Department from applying the bulletin retroactively.  Exxon

---

[23]    AS 43.55.075(a).

[24]    AS 43.05.240(a).

[25]    AS 43.05.241; AS 43.05.242(a)-(b) ("An appeal [directly to the superior court] may be taken from an informal conference decision only with respect to an issue in the assessment for tax, interest, and penalties that the taxpayer raises upon the ground that a tax statute or regulation is (1) violative of the United States Constitution; (2) violative of the state constitution; or (3) preempted by federal statute, regulation, or treaty.").

[26]    AS 43.05.480.

[27]    *See* AS 43.55.011(e)-(f).

asked the superior court to declare the bulletin void and to enjoin the Department from enforcing it. Both parties sought summary judgment.[28]

The superior court granted the Department's summary judgment motion. The court stated that under AS 22.10.020(g), it could hear the request for declaratory judgment only if an actual controversy were presented. The court concluded that there was no actual controversy because Exxon's claims were not ripe. The court noted that Exxon had neither suffered an injury nor shown that a hardship would occur if the court did not reach the merits of the claims. The court further noted that "[t]he normal risks associated with deciding hypothetical cases [were] present" because Exxon was "not seeking relief from unspecified taxes but rather asking for a determination on the meaning of the law." The court concluded that "[t]he risks of decision greatly outweigh [Exxon's] need for decision." The court also noted that even after the Department assesses a tax Exxon must exhaust its administrative remedies under the tax code before seeking judicial review.[29] Without explaining why Exxon's APA claim failed, the court granted the Department summary judgment on Exxon's claims.

Exxon appeals, arguing that the superior court erred by concluding that Exxon's claims were not ripe and that exhaustion was required. Exxon also argues that the advisory bulletin is a regulation contrary to law and that, even if it is not contrary to law, it cannot be applied retroactively.

---

[28]    *See* Alaska R. Civ. P. 56(c) (providing party is entitled to summary judgment if there is no genuine issue of material fact and party is entitled to judgment as matter of law).

[29]    *See* AS 43.05.480(a).

## III. STANDARD OF REVIEW

We review a grant of summary judgment de novo,[30] and we review whether an issue is ripe for judicial decision de novo.[31]

## IV. DISCUSSION

### A. The Department Is Entitled To Summary Judgment On The APA Claim Because The Advisory Bulletin Is Not A Regulation.

The APA's judicial review provision states: "An interested person may get a judicial declaration on the validity of a regulation by bringing an action for declaratory relief in the superior court."[32] Exxon argues that the advisory bulletin is a regulation that was not properly adopted under the APA. Although the superior court did not explain why the Department was entitled to summary judgment on the APA claim, we conclude that the APA claim fails as a matter of law because the advisory bulletin is not a regulation under the APA.

A regulation is "every rule, regulation, order, or standard of general application or the amendment, supplement, or revision of a rule, regulation, order, or standard adopted by a state agency to implement, interpret, or make specific the law enforced or administered by it."[33] " '[R]egulation' includes . . . 'guides to enforcement,' 'interpretative bulletins,' 'interpretations,' and the like, that have the effect of rules, orders, regulations, or standards of general application,"[34] but "not every agency action

---

[30] *RBG Bush Planes, LLC v. Kirk*, 340 P.3d 1056, 1060 (Alaska 2015).

[31] *Id.*

[32] AS 44.62.300(a).

[33] AS 44.62.640(a)(3).

[34] *Id.*

or decision constitutes a regulation."[35]  An agency's interpretation is a regulation under the APA if it meets two criteria.[36]  First, the interpretation must "implement[], interpret[], or make[] specific the law enforced or administered by the agency."[37]  Second, the interpretation must "affect[] the public" or be "used by the agency in dealing with the public."[38]  Obvious, common sense interpretations of existing law are not regulations under the APA.[39]

Pointing to the definition of regulation, Exxon argues that the advisory bulletin is, "at the very least, an 'interpretative bulletin' or an 'interpretation.' "[40]  The Department responds that the advisory bulletin is not a regulation because it is a nonbinding, common sense interpretation of existing law.

We conclude that the advisory bulletin is not a regulation because it does not satisfy the second prong; the advisory bulletin does not affect the public, and the Department does not rely on the bulletin in its interactions.  The legislature expressly authorized the Department to issue advisory bulletins interpreting the oil production tax statutes and regulations.[41]  Advisory bulletins under AS 43.55.110(g) are, by definition, limited in their ability to affect parties or be relied on by the Department in dealing with

---

[35]    *Chevron U.S.A., Inc. v. State, Dep't of Revenue*, 387 P.3d 25, 35-36 (Alaska 2016).

[36]    *Id.* at 36.

[37]    *Id.* (quoting *State, Dep't of Nat. Res. v. Nondalton Tribal Council*, 268 P.3d 293, 300-01 (Alaska 2012)).

[38]    *Id.* (quoting *Nondalton Tribal Council*, 268 P.3d at 301).

[39]    *Id.* at 36-37.

[40]    *See* AS 44.62.640(a)(3).

[41]    AS 43.55.110(g).

parties: The Department is prohibited from making an advisory bulletin binding on the Department or a regulated party without going through the APA rulemaking process.[42] The Department conceded that it "cannot solely base any assessment decision" on its advisory bulletin, and we agree that the Department may not treat the advisory bulletin as a dispositive interpretation of the oil tax code in future enforcement actions.

The legislature chose to authorize the Department to issue interpretations of oil production tax statutes "for the information and guidance of producers" without going through the APA's rulemaking procedures.[43] The legislature chose to prioritize the efficient distribution of Department guidance over the benefits of notice and comment rulemaking.[44] And, in light of this policy decision, it is illogical that the

---

[42] *Id.* ("Unless otherwise provided by the [D]epartment by regulation, interpretations stated in the advisory bulletins are not binding on the [D]epartment or others.").

[43] *See id.* ("*Notwithstanding AS 44.62*, the [D]epartment may issue . . . advisory bulletins stating the [D]epartment's interpretation of provisions of this chapter and of regulations adopted under this chapter." (emphasis added)). The Department unpersuasively argues that "[n]otwithstanding AS 44.62" means that advisory bulletins are exempt from the APA entirely. "Notwithstanding" means "in spite of." *Notwithstanding*, BLACK'S LAW DICTIONARY (11th ed. 2019). Alaska Statute 43.55.110(g) thus permits the Department to issue advisory bulletins despite the APA'S rulemaking provisions that otherwise would require additional actions. *See* AS 44.62.180-.290 (providing procedures for adopting regulations); AS 44.62.640(a)(3) (defining "regulation" as including " 'interpretative bulletins' . . . that have the effect of rules, orders, regulations, or standards of general application").

[44] *See* AS 43.55.110(g). Because of this legislative policy choice, our case law holding that common sense interpretations of law are not regulations under the APA is inapplicable in this case. Common sense interpretations of law are not regulations because they are so obvious that requiring rulemaking, designed to provide notice to regulated parties and to give them an opportunity to comment, would be redundant. *See, e.g.*, *Chevron U.S.A.*, 387 P.3d at 36. The legislature has made a policy decision not to
(continued...)

-11-                                                                7536

legislature would have intended nonbinding advisory bulletins to be subject to immediate judicial review under the APA. We thus hold that a nonbinding interpretive advisory bulletin under AS 43.55.110(g) is not a regulation under the APA.

The advisory bulletin is not a regulation, and the Department was entitled to summary judgment on Exxon's APA claim. Because we conclude that the nonbinding advisory bulletin is not a regulation under the APA, we also reject Exxon's argument that the advisory bulletin is a prohibited retroactive regulation.[45]

B.    **The Department Is Entitled To Summary Judgment On Exxon's Declaratory Judgment Claim Because It Is Not Ripe.**

The Alaska Declaratory Judgment Act, AS 22.10.020(g), provides:

> In case of an actual controversy in the state, the superior court, upon the filing of an appropriate pleading, may declare the rights and legal relations of an interested party seeking the declaration, whether or not further relief is or could be sought. The declaration has the force and effect of a final judgment or decree and is reviewable as such. Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against an adverse party whose rights have been determined by the judgment.

"The 'actual controversy' limitation in Alaska's declaratory judgment act reflects a general constraint on the power of courts to resolve cases."[46] The actual

---

[44]    (...continued)
require rulemaking procedures for these nonbinding advisory bulletins, and whether the advisory bulletin is sufficiently "obvious" is not relevant in this case.

[45]    *See* AS 44.62.240 (limiting retroactive application of regulations).

[46]    *State v. ACLU of Alaska*, 204 P.3d 364, 368 (Alaska 2009) (footnote omitted).

controversy requirement is not satisfied if a case is not ripe.[47]

The superior court dismissed Exxon's request for declaratory relief, concluding that it had failed to present an actual controversy. Specifically, the court held that Exxon's claim was not ripe because the Department had not yet assessed a tax against Exxon. The court noted that, in any event, Exxon would have to exhaust its administrative remedies if a tax were assessed.

Exxon argues that its challenge to the Department's advisory bulletin is ripe for review because the advisory bulletin "retroactively expos[es Exxon] to tax liability and civil penalties on tax filings it had *already* made prior to 2017[] and expos[es] Exxon to future liability for taxes in 2018 and beyond (that Exxon has since been obliged to file and pay)." (Emphasis in original.) Exxon emphasizes that the issue is fit for judicial review because whether the advisory opinion is contrary to law "is a purely legal question that will never get more ripe." Exxon argues that it needs to know the legal status of the advisory bulletin because otherwise, "[it] is left with two bad choices: either pay taxes it does not legally owe, or disregard the 2017 [a]dvisory [b]ulletin and 'risk enforcement penalties.' " Exxon contends that the risks of granting declaratory relief are minimal because no further factual development will aid in the decision and "further agency action would 'shed little if any light on these questions.' "

The Department responds that Exxon's claim does not present an actual controversy. The Department contends that Exxon is "seek[ing] relief from taxes, penalties, and interest in unspecified amounts that [the Department] has not assessed." Pointing to *Hickel v. Halford*,[48] the Department argues that our decision stands for the

---

[47]     *Id.*

[48]     872 P.2d 171, 186 (Alaska 1994) (holding "administrative proceeding" as used in article IX, section 17 of the Alaska Constitution "begins, for tax purposes, with
(continued...)

conclusion that tax cases are not ripe unless and until the Department has issued a tax assessment following an audit. The Department also points out that it "is not required to follow" and "cannot solely base any assessment decision" on the advisory bulletin. The Department adds that Exxon faces little hardship from the declaratory judgment claim's dismissal because Exxon will have an opportunity to appeal any taxes that are assessed. The Department emphasizes that all taxpayers, including Exxon, "ha[ve] uncertain tax liability in [their] unaudited returns."

"[R]ipeness depends on 'whether . . . there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' "[49] In analyzing whether a dispute is ripe, "[w]e examine 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.' "[50] Issues are not fit for judicial decision if an injury is too speculative.[51] Although " 'pure legal questions that require little factual development are more likely to be ripe,' a party bringing a preenforcement challenge must nonetheless present a 'concrete factual situation.' "[52]

---

[48]     (...continued)
the issuance of an assessment to the taxpayer").

[49]     *ACLU of Alaska*, 204 P.3d at 369 (alteration in original) (quoting *Brause v. State, Dep't of Health & Soc. Servs.*, 21 P.3d 357, 359 (Alaska 2001)).

[50]     *Id.* (quoting *Brause*, 21 P.3d at 359).

[51]     *See RBG Bush Planes, LLC v. Kirk*, 340 P.3d 1056, 1066-68 (Alaska 2015) (due process claim was not ripe because plaintiff had failed to avail himself of procedural safeguards designed to remedy complained of tribunal bias).

[52]     *ACLU of Alaska*, 204 P.3d at 368 (quoting *Alaska Right to Life Political Action Comm. v. Feldman*, 504 F.3d 840, 849 (9th Cir. 2007)).

We described the point at which tax disputes are appropriate for judicial review in *Hickel*, although the issue before us was not precisely the same as the one now before us.[53] We defined and analyzed the term "administrative proceeding" as used in article IX, section 17(a) of the Alaska Constitution, and we determined that an essential attribute of an administrative proceeding is that "a dispute must exist for the proceeding to resolve."[54] We concluded that a dispute arose in the tax collection context when a tax assessment was issued, but not before:

> Prior to the time that an assessment is issued, the taxpayer has either filed or failed to file a return. If the taxpayer has filed a return, this may be considered an assertion by the taxpayer that the amount stated, and only the amount stated, is due . . . . If [the Department] then issues an assessment to the taxpayer, demanding additional tax payments (with interest and penalties), then there has been 'an assertion of a right, claim or demand on one side, met by contrary claims or allegations on the other' and a dispute exists.[55]

And in *Standard Alaska Production Co. v. State, Department of Revenue* we specifically rejected a Department argument that a taxpayer's claim was not ripe because "the Department ha[d] already taken action against [the taxpayer] by levying a tax which [the taxpayer] must either pay or appeal."[56]

Exxon's claim is not fit for judicial decision because there is no existing tax dispute between the parties, and any injury Exxon eventually may suffer is speculative.

---

[53] 872 P.2d at 178-82.

[54] *Id.* at 178.

[55] *Id.* at 181-82 (footnote omitted) (quoting *Dispute*, BLACK'S LAW DICTIONARY (6th ed. 1990)).

[56] 773 P.2d 201, 210 n.14 (Alaska 1989).

Exxon attempts to present the advisory bulletin's validity as a purely legal question, but the advisory bulletin is not the Department's final legal determination of Exxon's tax liability. We decided that the advisory bulletin is not a binding regulation; the bulletin's interpretation, by its terms and by statute, is not binding on the Department or Exxon.[57] If and when the Department disputes Exxon's tax returns or payments by issuing an assessment, a dispute will arise. As the superior court correctly pointed out, once a dispute arises Exxon likely will need to exhaust its administrative remedies.[58] There is a clear benefit to the Department using its administrative expertise about the oil production tax framework to consider issues and defend or alter its current interpretation in the administrative process. The issue thus is not yet fit for judicial decision.

Exxon also will experience little hardship from denial of declaratory relief. The "legal and regulatory uncertainty" Exxon complains of is not unique. All taxpayers — whether oil companies or individuals — read the tax code (often with the help of licensed professionals) and determine what tax amount the law requires them to pay. When a tax credit or a write-off is claimed, there is a risk that the taxing authority will disagree with the taxpayer's interpretation of the law and that the taxpayer will be required to pay the correct tax plus penalties and interest. Exxon's position is no different.[59] The advisory bulletin provided Exxon additional information that may have

---

[57]     *See* AS 43.55.110(g).

[58]     *See supra* notes 23-25 (describing administrative appeals process).

[59]     Exxon argues that its challenge is similar to the pre-enforcement challenge in *State v. Native Village of Tanana*, 249 P.3d 734 (Alaska 2011). But that case is readily distinguishable. In *Native Village of Tanana* we held that a dispute about inherent tribal sovereignty relating to child custody proceedings under ICWA was ripe because, unlike the abstract constitutional challenge at issue in a previous case, "Indian
(continued...)

changed its risk calculation, but a nonbinding guidance document does not create a hardship if there was none before. The bulletin is beneficial; it provides guidance to producers trying to make sense of a very complicated set of statutes and regulations and helps producers assess the likelihood of a dispute with the Department.

Exxon complains that by denying declaratory relief, the superior court intimated: "Exxon should sit idly by and let interest and penalties accrue while it waits for an enforcement audit (which can take up to six years) and only then challenge the threshold legal issue through an administrative appeal of the audit." But Exxon conceded at oral argument to us that it has another remedy if it wishes to begin the administrative process sooner — Exxon is permitted to pay production taxes under protest and then request a refund from the Department.[60] Exxon's claim therefore is not ripe, and the superior court properly granted the Department summary judgment on the declaratory judgment claim.

## V.   CONCLUSION

We AFFIRM the superior court's entry of summary judgment.

---

[59]   (...continued)
children may [have been] at risk of harm because of the State's refusal to coordinate and cooperate with tribes regarding reports of harm" and Indian children and their parents faced a possibility of "legal limbo" due to "the State's refusal to give full faith and credit to tribal adoption decrees." *Id.* at 749. The harm Exxon faces as a taxpayer awaiting an audit and assessment is clearly not the same as children and families facing uncertainty about the legal validity of child custody proceedings.

[60]   *See* AS 43.10.210(a); *see also* 15 AAC 05.050(a) ("If the [D]epartment fails to act on a refund claim within six months from the date of filing the claim, the taxpayer may file a protest under 15 AAC 05.010.").