OPINION OF THE COURT
Nardelli, J.
At issue is the propriety of the City Council’s recent designation of landmark status to two buildings which in 1990 the Board of Estimate (the Council’s predecessor in matters of landmark designation) had chosen not to declare landmarks. Inasmuch as we conclude that the Council acted rationally, we affirm the dismissal of the CPLR article 78 petition brought by the property owner.
On April 24, 1990, the New York City Landmarks Preservation Commission (LPC) designated a full block of tenement buildings bounded on the east and west by York Avenue and First Avenue, and on the north and south by East 65th and East 64th Streets, commonly known as the First Avenue Estate *292 (Estate), as a historic landmark. The Estate is composed of 15 buildings which were built at the turn of the twentieth century as “light-court model tenements” intended to be alternatives to the dark and unventilated tenements of the time, but only the designation of two buildings facing York Avenue is at issue in this proceeding. The buildings are six stories tall, and are configured so that courtyards, stairways, hallways, and apartments receive maximum exposure to light and air.
The Estate is the oldest existing project of the City and Suburban Homes Company (C&SHC), a privately financed company which built low-cost housing to address the early twentieth century living conditions of the working poor. Its historical importance was noted in a report prepared by LPC’s research department, which stated that the Estate is considered to be “an important achievement in the social housing movement, bracketed in time between . . . English-inspired low density developments . . . and . . . post-World War I projects [such] as the Co-ops.” The original portions of the Estate were built in stages between 1900-1901 and 1905-1906. The remainder of the block was purchased by C&SHC in 1913, and the two buildings at issue were then erected in the same style and mode as the tenements that were previously built.
When the LPC designated the Estate as a landmark in 1990, it also designated a similar C&SHC light-court tenement development as a landmark. This was the York Avenue Estate, which was built between 1901 and 1913, and is composed of 14 tenement buildings bounded by York Avenue and FDR Drive, and by East 78th and East 79th Streets. The two estates are the only existing full-block light-court tenement developments in the country.
On August 21, 1990, at its last meeting, the now defunct Board of Estimate (BOE), which had review powers of LPC actions, voted 6-5 to approve the LPC’s designation of most of the First Avenue Estate as a landmark, but excluded from designation the two buildings facing York Avenue. At the same meeting the BOE voted 6-5 to approve landmark designation for the York Avenue Estate, but excluded from designation four buildings located at the eastern end of that development.
The BOE’s modifications of the LPC’s designations of both estates were challenged in article 78 proceedings filed in Supreme Court. The actions were consolidated, and the BOE filed papers in which it stated that the modifications were made as a compromise to allow new development which would provide tax revenues to the City.
*293 By order dated July 17, 1991, the Supreme Court (Charles E. Ramos, J.) dismissed the petitions and affirmed the BOB modifications. Only the York Avenue Estate matter was appealed. This Court reversed the dismissal, overturned the BOB modification, and reestablished the LPC designation of the entire block of the York Avenue Estate as a historic landmark (see Matter of 400 E. 64/65th St. Block Assn. v City of New York, 183 AD2d 531 [1992], lv denied 81 NY2d 736 [1992] [Kalikow decision]). The Court observed that LPC had designated the entire block as a landmark site, rather than some of the individual buildings:
“The position that a part of the complex should be considered worthy of designation as a landmark for its historical, architectural, cultural and aesthetic value and part should not is inherently inconsistent. The failure of the Board of Estimate to advance any reason for removing four of the 14 buildings in the complex from the designated landmark site does not render the action any less arbitrary when viewed in the context of the administrative record” (183 AD2d at 533).
In 2004 petitioner obtained alteration permits from the Department of Buildings to undertake work on certain exterior features of the York Avenue properties, the value of which had appreciably increased. The permits, which involve window replacement and exterior facade renovations, including removal of parapets and stuccoing, have been renewed on annual basis.
On September 8, 2004, Community Board No. 8 adopted a resolution in favor of amending the designation of the First Avenue Estate landmark site to include the two buildings facing York Avenue, and, on October 10, 2006, LPC calendared the amendment for hearing. At a public meeting held on November 21, 2006, LPC unanimously approved the amendment.
Also on November 21, 2006, the LPC issued a designation report regarding the properties, describing their similarities to the other buildings contained in First Avenue Estate, and stating that their inclusion in the Estate enhanced public understanding of C&SHC’s work, since the Estate now encompassed “the earliest and latest examples of the light-court model tenements that characterized the company’s urban development projects.” Attached as an addendum to the 2006 designation report was a copy of the original 1990 designation report setting forth, inter alia, the history of C&SHC, the genesis and develop *294 ment of First Avenue Estate, and the Estate’s influence on subsequent low-cost housing initiatives.
Following the LPC’s approval of the amendment, it was forwarded to the City Planning Commission, which issued a January 10, 2007 report stating that the amendment did not conflict with any existing zoning or redevelopment plans. A noticed public hearing was held before the City Council* on February 1, 2007, at which the Council voted 47-0 to affirm the amendment, and the two buildings were designated as historic landmarks.
In this article 78 proceeding, petitioner alleged that the LPC’s and City Council’s actions were arbitrary and capricious; that the BOE’s prior exclusion of the buildings from landmark status was binding on the LPC and the City Council; that the City Council had failed to explain its departure from BOE’s decision not to designate the two buildings as landmarks; and that both the developmental history of the buildings and the recent alteration work performed on their facades rendered them unworthy of landmark designation.
Supreme Court rejected petitioner’s argument that the two buildings, which were purportedly designed by a less well-known architect (Philip Ohm) than were the other 13 buildings (which were designed by James Ware), should not be included in the First Avenue Estate’s designation. Landmark status, the court held, is not limited to structures designed by noted architects or having special architectural distinction. To the contrary, all that was required for designation was the LPC’s determination that the buildings met the legislative definition of a landmark, i.e., were an “improvement, any part of which is thirty years old or older, which has a special character or special historical or aesthetic interest or value as part of the development, heritage or cultural characteristics of the city, state or nation” (Administrative Code of City of NY § 25-302 [n]). The court also observed that the last two buildings were designed in the same fashion as the others, with arched passages which led to a central courtyard and four corner entrances.
The court further rejected petitioner’s argument that the LPC’s designation report failed to take into account that the *295 “facelift” work performed on the buildings after issuance in 2004 of DOB’s alteration permit eliminated any visual homogeneity between the buildings and the rest of the Estate. The court found that at the time the designation report was issued and the buildings were designated as landmarks, only some of the alteration work had been performed, but it observed that even if all of the alteration work had been completed, the buildings’ “architectural significance is not solely in their facade or . . . detail, but in the site plan, the light courts, the size and the general design of the Buildings which has not been changed” (2008 NY Slip Op 32557[U], *13). As a whole, the court found, the buildings were still “easily recognizable as part of the First Avenue Estate complex,” and the alteration of their facades did not change their historical and cultural significance (id. at *14).
Before this Court, petitioner argues that the City Council’s approval of the LPC’s designation of the buildings as historic landmarks was arbitrary and capricious, because the Council failed to explain its reasons for deviating from the contrary 1990 decision of the BOE declining to approve landmark designation for these two buildings. It further argues that the principles underlying the doctrine of stare decisis are applicable in administrative as well as judicial contexts, and contends that the recent designation is barred because of BOE’s prior determination.
Initially, we note that the decision to make landmark designations is administrative, rather than quasi-judicial in nature (Matter of Gilbert v Board of Estimate of City of N.Y., 177 AD2d 252 [1991], lv denied 80 NY2d 751 [1992]). Thus, our review is limited to a determination of whether the LPC’s designation of the buildings had a rational basis or if, as petitioner contends, it was arbitrary and capricious (see Matter of Society for Ethical Culture in City of NY. v Spatt, 68 AD2d 112, 116 [1979], affd 51 NY2d 449 [1980]). Moreover, in assessing rationality, we accord significant deference to the expertise of the LPC (Teachers Ins. & Annuity Assn. of Am. v City of New York, 185 AD2d 207 [1992], affd 82 NY2d 35 [1993]).
Petitioner relies predominantly on the decision in Matter of Charles A. Field Delivery Serv. (Roberts) (66 NY2d 516 [1985]) for its contention that the City Council was required to offer articulable grounds for its departure from BOE’s precedent to exclude the remaining two buildings from landmark status. Field involved a company which operated a delivery service for a medical laboratory, and involved a determination by the *296 Unemployment Insurance Appeal Board that drivers with whom the respondent contracted were actually independent contractors rather than, as the Board had ruled on two prior occasions (in decisions upheld by the Court of Appeals), employees. The Court of Appeals held that the facts underlying the Board’s third decision were very similar to those underlying its two earlier decisions, and hence it was required to explain why a different result had been reached. In pertinent part the decision stated, “[A]n administrative agency decision which, on essentially the same facts as underlaid a prior agency determination, reaches a conclusion contrary to the prior determination is arbitrary and capricious” {id. at 518). The Court stated that where an agency has not given a reason for its departure from precedent, a reviewing court will be unable to determine whether the change in interpretation was done for valid reasons, and a vacatur of the agency’s determination was required {id. at 520). The Court did, however, observe:
“Stare decisis is no more an inexorable command for administrative agencies than it is for courts. They are, therefore, free, like courts, to correct a prior erroneous interpretation of the law by modifying or overruling a past decision. They are, likewise, free, like courts, to determine how disputed facts are to be decided, judging credibility and drawing such inference as they find reasonable in order to resolve contested questions of fact, and it is not within the power of the courts to impose factual consistency” {id. at 518-519 [citations omitted]).
Thus, even where there has been a reversal of a prior administrative decision, it will be upheld if the proffered reasons for the reversal or modification find rational support.
The record compiled during the proceedings contains testimony before the City Council Subcommittee on Landmarks, Public Siting and Maritime Uses stating that the BOE’s 1990 decision to exclude the buildings from landmark designation was a “bad backroom deal,” and was an “inappropriate politically motivated action” made under “intense political pressure from a powerful real estate developer.” Additionally, when introducing the amendment to the full City Council, the Speaker of the Council described the BOE’s decision to exclude the buildings from landmark designation as a bad decision based upon improper considerations which had nothing to do with the buildings’ historical or cultural significance.
*297 It is not this Court’s function to inquire into the nature of the “political deal,” bad or otherwise, which led to the Council’s determination to reverse the BOE’s decision and grant landmark status. Rather, our review is limited to determining whether the Council’s administrative determination was rational, i.e., whether it had a sufficient basis for concluding that the prior determination should not be followed. In this regard the record demonstrates that there was a prior finding in 1990 that the First Avenue Estate needed to be protected in its entirety as a socio-historic monument in the history of urban housing, and that but for the existence of a political compromise at the time, the entire district would have been designated a landmark. That the determination was not appealed does not now preclude the LPC and the City Council from revisiting the issue.
The LPC is statutorily authorized to amend any prior designation of a landmark (see Administrative Code § 25-303 [c]), and as a reviewing agency, the BOE and/or City Council may reconsider its prior landmark determinations in light of an LPC redesignation. In Matter of Gilbert, the LPC had included a particular block within the landmark designation of the South Street Seaport Historic District, and the BOE modified the designation in 1977 to exclude that block. Twelve years later, the LPC again designated the block as an historic landmark, and this time the BOE approved the designation. The Supreme Court rejected an article 78 challenge to the redesignation, and this Court affirmed, holding, in pertinent part, “[s]ince the [earlier] determination was not quasi-judicial, the doctrines of stare decisis, collateral estoppel and res judicata[ ] would not be applicable” (177 AD2d at 253).
Petitioner also argues that Supreme Court erred by invoking this Court’s Kalikow decision as a post hoc justification for the City Council’s approval of landmark status for the buildings. Yet, the administrative record shows that during the January 31, 2007 hearing before the City Council’s Committee on Land Use, the Chairperson stated that there had been litigation in the wake of the BOE’s 1990 decision to exclude buildings in the York Avenue and First Avenue Estates from landmark designation, and that the petitioners in the York Avenue Estate matter had successfully appealed the denial of article 78 relief. Hence, the Chairperson explained, in the instant matter, “[T]here is legal precedent, I think ... on the resident’s [i.e., respondent’s] behalf.” Thus, the record compiled during administrative proceedings does indicate that the Kalikow decision was at least *298 a minor consideration in the City Council’s approval of the buildings’ landmark designation, and not simply an afterthought in Supreme Court’s decision.
Consequently, inasmuch as the City Council was free to revisit the issue, and since the record provides a rationale for the Council’s departure from the prior BOE administrative determination, the only remaining issues are petitioner’s contentions that the buildings themselves are not worthy of landmark status. It contends that the Estate is without architectural distinction, and that there is a larger and better example of C&SHC’s full-block light-court tenements which has already been given landmark status—the York Avenue Estate. The Landmarks Law, petitioner argues, only authorizes LPC to designate structures which have a-“special character or special historical or aesthetic interest or value as part of the development, heritage or cultural characteristic of the city, state or nation” (Administrative Code § 25-302 [n]). It also contends that when designating the buildings as historic landmarks, the LPC could not rely upon reasoning that the First Avenue Estate is significant as one of only two full-block light-court tenement developments, since the Estate was designated as a landmark even without inclusion of the buildings following the BOE’s 1990 action denying the buildings landmark status.
Petitioner’s argument overlooks that in 1990 the LPC had determined that the entire First Avenue Estate, not just some of the buildings individually, was a landmark site, arid that but for the modification by the BOE, the entire block would have had landmark status since 1990. The rationale underlying the Kalikow decision—the importance of the York Avenue Estate as a whole—applies equally to the First Avenue Estate. It is one of only two full-block light-court tenement developments in the country.
The designation of the buildings is thus based upon historical and cultural, rather than just architectural, grounds. The LPC is clearly authorized to designate as landmarks structures with special historical interest or value which are reflective of the “development, heritage or cultural characteristics of the city” (see Administrative Code § 25-302 [n]; Matter of Russo v Beckelman, 204 AD2d 160, 162 [1994], lv denied 85 NY2d 802 [1995]). As this Court stated in Society for Ethical Culture in City of NY., “[i]f the preservation of landmarks were limited to only that which has extraordinary distinction or enjoys popular appeal, much of what is rare and precious in our architectural and historical heritage would soon disappear” (68 AD2d at 117).
*299 Petitioner’s argument that since the buildings were the last to be constructed in the First Avenue Estate and were designed by a lesser-known architect, they have no landmark value, is also unavailing. C&SHC’s original master plan could not actually envision a full-block development when work on the First Avenue Estate commenced, since it did not own the entire property. Even its own property, as the record shows, was built in stages. The last parcels (on which the two buildings at issue were built) became available within 15 years after the first buildings were constructed, however, and C&SHC then completed its construction of a full block of light-court tenements, all of which remain standing today. Additionally, even though more than one architect worked on the design of the Estate, the record clearly indicates that all construction was based upon similar plans and designs.
Finally, petitioner argues that its alteration work to the buildings’ facades lessened the visual homogeneity between the buildings and the rest of the First Avenue Estate, and LPC failed to address this factor when designating the buildings as landmarks. To the extent Supreme Court found that despite the alteration work, the buildings are recognizable as part of the First Avenue Estate, petitioner claims the court erred by considering matters outside the administrative record.
The record indicates that when the buildings were designated as landmarks by the LPC on November 21, 2006, little of the authorized alteration work had actually been performed on their facades. At the present time, however, it appears that a substantial amount of the alteration work has been performed. The landmark designation should be assessed based upon the buildings’ condition at the time of designation, and the fact that petitioner, after designation, performed authorized alterations to the buildings’ facades does not render such designation invalid. Moreover, as discussed, the buildings’ landmark status is based upon their historical and cultural significance. Petitioner’s alteration work did not change the buildings’ footprints, layouts, courtyards, entrances, or accessibility to light and air, all of which are defining characteristics of the First Avenue Estate.
In sum, the LPC and City Council were fully within their authority to revisit the issue of whether the buildings should be accorded landmark status, their determination to do so was not irrational, and the two buildings clearly have a historical significance that justifies their designation as landmarks.
Accordingly, the order of the Supreme Court, New York County (Emily Jane Goodman, J.), entered on or about Septem *300 her 24, 2008, which denied the petition seeking to annul the City Council’s approval of the Landmarks Preservation Commission’s designation of two twentieth century tenement buildings as New York City historic landmarks, and dismissed the proceeding brought pursuant to CPLR article 78, should be affirmed, without costs.
Tom, J.E, Andelas, Friedman and Catterson, JJ., concur.
Order, Supreme Court, New York County, entered on or about September 24, 2008, affirmed, without costs.

 After the United States Supreme Court found the structure of the BOE to be unconstitutional in Board of Estimate of City of New York v Morris (489 US 688 [1989]), the New York City Charter was revised and the City Council assumed the BOE’s role in reviewing LPC landmark designations (Administrative Code of City of NY § 25-303 [g] [2] [Landmarks Law]).